**Douglas E. KAMPFER and Barbara J. Kampfer, Plaintiffs,**

v.

**William GOKEY, Superintendent, Ernest Clapper, Elementary School Principal, Mayfield Central School, Defendants.**

**No. 95–CV–1587 (FJS) (DNH).**

United States District Court, N.D. New York.

March 10, 1997.

---

Douglas E. Kampfer, Barbara J. Kampfer, Mayfield, NY, Plaintiffs Pro Se.

Maynard, O'Connor, Smith, Catalinotto & D'Agostino, Albany, NY (Bruce A. Bell, of counsel), for Defendants.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

Currently before this Court are three motions relating to plaintiffs' *pro se* 42 U.S.C. § 1983 action against defendants William Gokey, Superintendent, and Ernest Clapper, Elementary School Principal, of the Mayfield Central School District: plaintiffs' motion for an order of recusal pursuant to 28 U.S.C. § 455, plaintiffs' motion for summary judgment pursuant to Fed.R.Civ.P. 56, and defendants' motion for dismissal pursuant to Fed. R.Civ.P. 12(h).

## BACKGROUND

Plaintiffs' daughter, Heidi Kampfer, was absent from school on October 30, 1995.[1] When she returned to school on October 31, Nurse Henry, a nurse from an area school program, checked Heidi and found evidence of nits. While state law requires that stu-

---

1. There is some dispute as to why Heidi was absent on October 30. Plaintiffs contend that she had a "bad cold"; defendants contend that she had been excused because of headlice or nits.

dents found with nits or headlice be sent home from school to avoid the risk of contagion,[2] plaintiffs came to the school and asked that Heidi be allowed to stay through the day in order to participate in the school's Halloween festivities later that day. Defendant Ernest Clapper permitted Heidi to stay for the day's parade and party.[3]

When Heidi came to school the next day, November 1, her teacher told her to go to the office of their school nurse, Nurse Linda Hand, to be re-checked for nits before being readmitted to the classroom.[4] However, Heidi apparently was upset by this and refused to go to the nurse, so plaintiffs were contacted. Plaintiff Douglas Kampfer came to the school, as well as a deputy sheriff whom Kampfer had summoned. The school offered to have Heidi inspected by the school nurse, but Mr. Kampfer refused to have Nurse Hand perform the inspection, demanding instead that the inspection be done by the school physician. Defendants refused to authorize the school physician to inspect Heidi, and thus Heidi, still uninspected, was sent home from school.

Plaintiffs filed the instant *pro se* § 1983 action on November 7, 1995. Plaintiffs allege that the defendants violated plaintiffs' Fourteenth Amendment rights as parents to educate their child in the school of their choice. More particularly, plaintiffs allege that defendants refused on November 1 and 2 to authorize the medical inspection of plaintiffs' child by the school doctor for the purpose of certifying that she was free of any contagious disease and could return to school.[5]

## DISCUSSION

In reviewing the submissions of a plaintiff acting *pro se*, the Court must "read his sup-porting papers liberally, and will interpret them to raise the strongest arguments that they suggest." *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (quotation omitted).

### I. Plaintiffs' Motion for Recusal

■ Plaintiffs move, pursuant to 28 U.S.C. § 455, for recusal of the undersigned judge. Plaintiffs claim that "the assigned District Court Judge could not and would not be able to render any decisions in [this case] without bias," because on May 1, 1995, in a related action, plaintiffs filed a motion for an order of protection for their children before the undersigned, and on May 22, 1995, plaintiffs filed a judicial conduct complaint against the undersigned in the United States Court of Appeals for the Second Circuit, claiming that this judge's failure to decide their motion for a protective order by that date endangered the health, safety and welfare of their children. (Pls.' Aff.Supp.Mot.Recusal at 2). This Court also points to the fact that on October 11, 1996, while the instant motions were pending, plaintiffs in this action filed a suit against the undersigned in this district court requesting injunctive and other relief. *Kampfer v. Scullin,* No. 96–CV–1658 (RSP) (DNH). In that suit, plaintiffs complain of the undersigned's failure to promptly respond to their motion for an order of protection in their previous action, and demand review of that motion by an unbiased judge and the institution of a local rule mandating timely response to similar motions.

■ Plaintiffs' claims of bias are serious ones, subject to careful consideration by this Court. Pursuant to section 455, a federal judge must recuse himself "in any proceeding in which his impartiality might *reasonably* be questioned." 28 U.S.C. § 455(a) (emphasis added). The relevant inquiry is

---

**2.** New York's Education Law provides that "[w]henever upon investigation a pupil in the public schools shows symptoms of any contagious or infectious disease ..., he shall be excluded from the school and sent to his home immediately." N.Y.Educ.Law § 906 (McKinney 1988).

**3.** Heidi's teacher was advised of the situation and instructed to minimize Heidi's contact with other children in the classroom.

**4.** New York law allows a student who has been found to have symptoms of a contagious disease to return to school only after having received a certificate of health from either a family physician, the town or city health officer, or the school's medical inspector. *See* N.Y.Educ.Law § 906.

**5.** Heidi did return to school on November 15, 1995, after being examined by the High School Nurse at the request of Plaintiff's oldest daughter Gretchen Kampfer.

whether "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned." *United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992). Section 455 serves to promote public confidence in the impartiality of the judicial process, which is fundamental to the integrity of the judiciary. *See generally United States v. Brinkworth,* 68 F.3d 633, 637–38 (2d Cir.1995).

While this Court appreciates plaintiffs' concern for the health and safety of their children, and their fear of unjustified reprisal by the undersigned, neither the alleged untimeliness of this judge's decision on plaintiffs' motion in the previous case, the mere fact that plaintiffs filed a judicial conduct complaint against the undersigned, nor plaintiffs' subsequent suit against the undersigned, show "a deep-seated favoritism or antagonism" to plaintiffs, such that the undersigned's impartiality could reasonably be questioned in this action. *Liteky v. United States,* 510 U.S. 540, 556, 114 S.Ct. 1147, 1158, 127 L.Ed.2d 474 (1994).

The recusal statute was not intended "to be used as a judge shopping device." *Nichols v. Alley,* 71 F.3d 347, 351 (10th Cir. 1995). The Supreme Court has held that where grounds for recusal consist of "judicial rulings [and] routine trial administration efforts" which occur "in the course of judicial proceedings," recusal will not be appropriate absent a showing that those rulings either "relied upon knowledge acquired outside such proceedings [or] displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky,* 510 U.S. at 556, 114 S.Ct. at 1158. Prior adverse rulings are not in themselves grounds for recusal. *See id.* at 554–56, 114 S.Ct. at 1157; *United States v. Cooley,* 1 F.3d 985, 994 (10th Cir.1993). Nor, for that matter, can litigants obtain recusal simply by filing a frivolous suit against the judge. *See Cooley,* 1 F.3d at 994; *United States v. Pryor,* 960 F.2d 1, 3 (1st

Cir.1992) ("It cannot be that an automatic recusal can be obtained by the simple act of suing the judge."). "[A] judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Nichols,* 71 F.3d at 351.

In this case, plaintiffs have made conclusory claims of bias without adequate supporting factual allegations. The Court finds no merit to Plaintiffs' claims against the undersigned and therefore sees no basis for recusal. Thus, the motion for recusal must be denied.[6]

## II. Defendants' Cross–Motion for Dismissal

Defendants move for dismissal pursuant to Fed.R.Civ.P. 12(h) on the grounds that this Court lacks subject matter jurisdiction because no valid federal claim is made and plaintiffs lack standing.

Fed.R.Civ.P. 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." In order to defeat this Court's subject matter jurisdiction, defendants must show that the federal claim underlying plaintiffs' § 1983 action is "so insubstantial, implausible, or otherwise completely devoid of merit as not to involve a federal controversy." *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1056 (2d Cir.1993); *see Hagans v. Lavine,* 415 U.S. 528, 537, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974).

In order to state a § 1983 claim, a plaintiff must allege facts which demonstrate deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. 42 U.S.C. § 1983. Plaintiffs' complaint alleges violations of plaintiffs' Fourteenth Amendment rights to equal pro-

---

**6.** This Court also notes that "recusal motions are to be made at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Gil Enters., Inc. v. Delvy,* 79 F.3d 241, 247 (2d Cir.1996) (internal quotation omitted). Here, plaintiffs waited ten months after learning that their complaint in this action was assigned to the undersigned before requesting recusal, despite the fact that the events giving rise to this motion for recusal occurred in mid–1995. In the meantime, plaintiffs filed a motion for summary judgment and responded to a motion for dismissal, all before the same judge of whom they now request recusal.

tection and due process. This vague statement is later clarified. As plaintiffs explain in their Affidavit in support of their Motion for Summary Judgment,

> In our complaint, we allege that the Defendants deprived us of our right to give our child(ren) a[n] Education, in the Public School of our choosing, the Mayfield Central School, pursuant to the 14th Amendment of the Constitution of the United States, encompassing those Rights Guaranteed by the First Amendment, the right to choose the Education of a child, and the fundamental right to educate one[']s child and to give one[']s child a[n] education suitable to [ ] their station in life.

(Pls.' Aff.Supp.Mot.Summ.J. at 1). Similarly, in support of their Motion for Recusal, they explain that they filed this action,

> alleging the defendants violated our rights as parents, to give our child(ren) a[n] Education in the school of our choice, and to give our child(ren) a[n] Education suitable to their station in life, all pursuant to the Fourteenth Amendment encompassing those Rights secured by the First Amendment under the Constitution of the United States.

(Pls.' Aff.Supp.Mot.Recusal at 1).

More specifically, plaintiffs claim that defendants failed to comply with New York education law regarding the medical inspection of their daughter Heidi after she was diagnosed with nits, and that this failure violated their Fourteenth Amendment rights as parents. Plaintiffs claim that defendants refused to authorize the *school doctor* to inspect Heidi, as allegedly required by N.Y.Educ.Law § 906 (McKinney 1988),[7] but rather only offered the inspection of the *school nurse*. Plaintiffs refused the school nurse's inspection, and demanded the inspection of a physician. This refusal by the Defendants forms the factual basis for plaintiffs' claim that their constitutional right to privacy was violated.

Plaintiffs seriously misconstrue the import of *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), and *Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). Both *Pierce* and *Meyer* recognize that the right to privacy encompasses some activities of child rearing and education. However, those rights are strictly limited. In *Meyer*, the Supreme Court held that a state statute forbidding the teaching of foreign languages in all schools—public, private, and parochial—prior to the ninth grade, violated the rights of the parents "to control the education of their" children, and offered no reasonable countervailing state interest. *Meyer*, 262 U.S. at 397, 401, 403, 43 S.Ct. at 626, 627, 628. In *Pierce*, the Court held that a state law compelling children between the ages of eight and sixteen to attend public school up through the eighth grade was unconstitutional because it "unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control." 268 U.S. at 534–35, 45 S.Ct. at 573. The Court explained: "The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Id.* at 535, 45 S.Ct. at 573.

Plaintiffs' contention, that this limited due process right entitles them to have their daughter inspected by a school doctor rather than a school nurse before being readmitted to public school after showing symptoms of a contagious disease, is unreasonable. Such a broad reading is, in this Court's view, entirely untenable. Parents' right to educational choice for their children is triggered by substantial denials of educational choice of the *Meyer* and *Pierce* variety, not by state health and welfare concerns over who is responsible for checking children for contagious diseases. Even assuming violation of the New York

---

7. Section 906 of New York's Education Law provides in relevant part: "The medical inspector shall examine each pupil returning to a school without a certificate from the health officer of the city or town, or the family physician, after absence on account of illness or from unknown cause." The Education Law provides that school districts must employ as medical inspector "a competent physician," and may also employ one or more nurses and other health care professionals to aid the medical inspector. N.Y.Educ.Law § 902(1) (McKinney 1988).

172

law, such a denial does not rise to the level of a denial of a fundamental constitutional right.

This Court finds that plaintiffs' federal claim is so devoid of merit as to fail to state a justiciable federal claim. The "right" they claim does not exist as they understand it. The limited "right to educational choice" which they invoke does not give them the authority to have their daughter checked for nits by a school doctor as opposed to a school nurse. Therefore, this Court does not have jurisdiction over the subject matter of this case. Having found that this Court lacks jurisdiction to hear this case, the Court need not reach the question of plaintiffs' standing, nor plaintiffs' motion for summary judgment.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for recusal is DENIED, plaintiffs' motion for summary judgment is DENIED, defendants' cross-motion for dismissal is GRANTED, and plaintiffs' action is DISMISSED in its entirety.

**IT IS SO ORDERED.**