**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al., Plaintiffs,**

v.

**Alexander S. LAMBROS, Jr., Defendant.**

No. 97–1728–CIV–T–24(B).

United States District Court,
M.D. Florida,
Tampa Division.

March 9, 1998.

Bennett Falk, Morgan, Lewis & Bockius, Miami, FL, for Merrill Lynch, Pierce, Fenner & Smith, Inc., David Reid McWilliams.

Thomas R. Grady, Grady & Associates, LPA, Naples, FL, for Alexander S. Lambros, Jr.

Tracy Ann Borgert, Gray, Harris & Robinson, P.A., Orlando, FL, for Andrew Fellios.

## ORDER

BUCKLEW, District Judge.

This cause comes before the Court for consideration of Defendant's Motion to Vacate or Modify Arbitration Award (Doc. No. 10, filed September 30, 1997). Plaintiffs filed a response in opposition on December 8, 1997 (Doc. No. 32), and Defendant filed a supplementary affidavit on January 13, 1998 (Doc. No. 35).

Plaintiffs Merrill Lynch and David McWilliams commenced this action against Defendant Alex Lambros on July 10, 1997 (Doc. No. 1), seeking the confirmation of an arbitration award entered substantially in Plaintiffs' favor.[1] Defendant now seeks to vacate that award, invoking a variety of grounds, including arbitrator bias, discovery misconduct, procedural maneuvering, and arbitrary and capricious rulings.

### A. Standard of Review

This Court's review of an arbitration award is controlled by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. (the "FAA").

---

1. In the underlying action, Defendant filed a Statement of Claim with the New York Stock Exchange, alleging a discriminatory discharge under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. (the "ADA"), the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA"), and related state claims (including defamation). In a unanimous award issued June 26, 1997, arbitration panel (i) denied Defendant's claims for compensatory damages, punitive damages, and attorney's fees, (ii) directed Plaintiffs to expunge all negative comments from Defendant's Form U–5, (iii) ordered Plaintiffs to reimburse Defendant for his filing fee ($1,500), and (iv) ordered Plaintiffs to pay the forum fees ($18,900). See Exh. A to Doc No. 2.

"[I]t is well settled that judicial review of an arbitration award is narrowly limited." *Lifecare Intern., Inc. v. CD Medical, Inc.*, 68 F.3d 429, 433 (11th Cir.1995) (quoting *Davis v. Prudential Securities, Inc.*, 59 F.3d 1186, 1190 (11th Cir.1995)). *See also Peabody v. Rotan Mosle, Inc.*, 677 F.Supp. 1135, 1137 (M.D.Fla.1987) (judicial review of an arbitration award is "exceedingly narrow and is normally confined to the broad contours of procedural fairness and arbitral impartiality."). "[T]he statute does not allow courts to 'roam unbridled' in their oversight of arbitration awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in specified ways." *Robbins v. Day*, 954 F.2d 679, 683 (11th Cir.1992) (citing *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 1410 (11th Cir.1990).

Section 10 of the FAA sets forth the exclusive statutory grounds for vacating an arbitration award. It permits vacatur:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

In addition to these four statutory grounds, the Eleventh Circuit has recognized three non-statutory bases for vacatur: the award may be vacated (i) if it is arbitrary and capricious, (ii) if its enforcement is contrary to public policy, or (iii) if it evinces a manifest disregard for the law. *Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456, 1458–59, 1461–62 (11th Cir.1997). These grounds—the four statutory and the three non-statutory—are the sole grounds upon which an arbitration award may be vacated.[2]

### B. Analysis

In the present case, Defendant raises an assortment of grounds for vacatur. For the sake of simplicity, the Court addresses these in the order they were raised by Defendant.

### 1. Evident Partiality

Defendant's first foray into vacatur is an allegation of arbitrator bias. More specifically, defendant argues that two of the three arbitrators on the panel—Andrew Fellios and Chairman William Nodine—were predisposed to find in favor of Plaintiffs.

Evident partiality is grounds for vacatur under Section 10(a)(2) of the FAA. To establish evident partiality, the moving party must demonstrate that the undisclosed information creates a "reasonable impression of partiality." *Lifecare*, 68 F.3d at 433 (quoting *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1201 (11th Cir.1982)). The alleged partiality must be " 'direct, definite and capable of demonstration rather than remote, uncertain, and speculative.' " *Id.* In general, "the mere appearance of bias or partiality is not enough to set aside an arbitration award." *Id.* (citing *Consolidated Coal Co. v. Local 1643, United Mine Workers of Amer-*

---

**2.** It should be noted that the statutory grounds for the modification of an arbitration award are somewhat different. These are:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

Although Defendant styles his motion for vacatur as a motion to vacate *or modify* the arbitration award, Defendant fails to argue, much less cite to, any of the above grounds for modification of the award. In any event, for the reasons stated in this Order, the Court does not believe that any of the grounds raised by Defendant compels a modification of the award under § 11.

*ica,* 48 F.3d 125, 129 (4th Cir.1995). If, however, the movant can show that an arbitrator failed to disclose a substantial relationship between himself and a party, then the less demanding "appearance of bias" standard applies. *Park v. First Union Brokerage Services, Inc.,* 926 F.Supp. 1085, 1088 (M.D.Fla.1996) (citing *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 151–52, 89 S.Ct. 337, 340–41, 21 L.Ed.2d 301 (1968) (White, J., concurring)).

**(i) Andrew Fellios**

Defendant argues that Mr. Fellios was biased in that (i) he and Peter Hurtgen (one of the attorneys representing Merrill Lynch) were fraternity brothers, (ii) Mr. Fellios was involved in a factually similar arbitration implicating his employer, Prudential Securities (the *Cusick* matter), and (iii) the law firm representing Merrill Lynch in this case ("Morgan, Lewis") was the same law firm that represented Prudential Securities in the *Cusick* matter.

With respect to Mr. Hurtgen, the record reflects that Mr. Fellios disclosed his relationship with Mr. Hurtgen and that Defendant's counsel made no objection:

Mr. Fellios: Mr. Hurtgen and I were undergraduate students together at Georgetown. I have not seen Mr. Hurtgen since 1962. I've had no dealings with him, social, business or otherwise. Mr. Hurtgen's presence would not affect my participation in these proceedings. I think that should be disclosed to the panel and the parties.

Chairman: Thank you very much. Any comment?

Mr. Grady: No. That's fine sir.

Exh. 5 to Doc. No. 32.

■■■ Needless to say, the fact that Defendant did not object to the relationship at anytime during the arbitration process is significant. *See, e.g., Dean Witter Reynolds, Inc. v. Bork,* 1991 WL 164465, at *3 (E.D.Pa. 1991) ("By remaining silent and failing to assert any objections during the arbitration proceedings, a party waives its right to object [in a petition to vacate] at a later date.") Moreover, a mere school relationship is too remote and speculative to constitute evident partiality. *See, e.g., Groden v. Random House, Inc.,* 1994 WL 519871, at *2 (S.D.N.Y. 1994) (refusing to recuse judge where he disclosed that he was a former law school classmate of defense counsel and plaintiff offered no objection when relationship was initially disclosed); *MacKenzie v. Super Kids Bargain Store, Inc.,* 565 So.2d 1332, 1338 (Fla.1990) (recognizing that several relationships, such as "former classmates or fraternity brothers," are legally insufficient to compel the disqualification of a judge).

■■■ As for the *Cusick* matter, Defendant has failed to submit any real evidence regarding this case and its purported relationship to the instant case. Defendant's sole support for these accusations is a self-serving, hearsay affidavit from Defendant's counsel, Thomas Grady, wherein Mr. Grady summarizes a conversation he had with Mr. Cusick. *See* Doc. No. 10, pp. 4–6; Doc. No. 11, p. 8; App. A to Doc. No. 11, Tab 3. In short, Defendant does not point this Court to a single piece of direct evidence that establishes that the *Cusick* matter was ever arbitrated, much less any specific evidence tying *Cusick* to Mr. Fellios.[3] In any event, the Court considers this relationship tenuous at best. *See, e.g., United States v. Eisenberg,* 773 F.Supp. 662, 734 n. 70 (D.N.J.1991) (recognizing Third Circuit decision denying recusal of judge who had suffered losses in penny stock scam despite fact that defendant was accused of selling similar stocks); *see also Washburn v. McManus,* 895 F.Supp. 392, 395–96 (D.Conn.1994) ("Courts should not encourage unsuccessful parties to arbitration in their efforts to seek insubstantial, 'tenuous relationships' which might form the basis for some theoretically plausible yet completely unsubstantiated cry of bias."). Accordingly, the Court concludes that the allegations regarding Mr. Fellios are without merit.

---

3. The Court notes that Plaintiffs have asserted (also without support) that Mr. Fellios was neither a party nor a witness in *Cusick,* that Morgan, Lewis has never represented a party in *Cusick,* and that Plaintiffs' counsel was not even aware that *Cusick* existed until Defendant mentioned it in his motion to vacate. Doc. No. 32, pp. 11–12.

## (ii) William Nodine

■ With respect to Chairman Nodine, the gist of Defendant's argument is that Mr. Nodine was so threatened by the possibility of Merrill Lynch filing a lawsuit against him (for fraud) or filing complaints with the Florida Bar (for professional misconduct), that he voted to not award damages to Mr. Lambros. What Defendant neglects to mention, however, is that Merrill Lynch's accusations of fraud and professional misconduct were couched in a motion to recuse Mr. Nodine,— a motion which was made by Plaintiffs in the course of the arbitration, which was opposed by Defendant at that time, and which was ultimately denied. Defendant saw no need to question Mr. Nodine's detachment until Defendant filed the subject motion to vacate. Indeed, at the conclusion of the arbitration process, Defendant was asked if he had any objections regarding the fullness and fairness of the hearing, and Defendant responded in the negative. *See* Exh. 7 to Doc. No. 32. In any event, the Court agrees with Plaintiff that Defendant's efforts to impugn Mr. Nodine are insufficient as a matter of law. *See Gorden,* 1994 WL 519871, at *2 (denying recusal where assertions that judge was "crooked and corrupt" were without record support); *see also Callihan v. Eastern Kentucky Production Credit Ass'n,* 1990 WL 12186, at *2 (6th Cir.1990) ("Recusal is not required simply because one of the parties has initiated litigation against the presiding judge."); *Kampfer v. Gokey,* 955 F.Supp. 167, 169–70 (N.D.N.Y.1997) (recusal denied notwithstanding filing of judicial conduct complaint against judge). The motion on this ground is therefore denied.

## 2. Refusal to Review

■ Section 10(a)(3) permits vacatur of an award where an arbitrator is guilty of misconduct in refusing to postpone the hearing, refusing to hear evidence, or any other

misbehavior by which the rights of a party have been prejudiced. In the instant case, Defendant argues that two incidents—the striking from the record of comments made by a previous arbitrator and the failure of Mr. Adrian to obtain his own copy of the exhibits,—combined to prevent Mr. Adrian from giving the case a full and fair hearing. This argument fails for several reasons. First, Section 10(a)(3) clearly requires an arbitrator's refusal or other affirmative act, and it is difficult to construe either of these incidents as an affirmative "refusal," especially since neither incident was raised as a concern during the arbitration process. More specifically, Defendant did not object to the recusal of Mr. May, *see* Exh. 8 to Doc. No. 32, the striking of Mr. May's comments, *see* Exh. 9 to Doc. No. 32, or the fact that Mr. Adrian's copy of the case file did not include a copy of the exhibits, *see* Exh. 10 to Doc. No. 32.[4] Second, even if these incidents were properly raised by Defendant, neither incident falls outside of the wide discretion enjoyed by the arbitration panel. *See Robbins,* 954 F.2d at 685 (arbitrator enjoys wide latitude and proceedings are not constrained by the formal rules of procedure or evidence). Third, "a federal court may vacate an arbitrator's award under 9 U.S.C. § 10(3)(a) only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties and denies them a fair hearing." *Id.* Defendant has made no showing that either incident prejudiced his case, much less specifically identified the comments that were struck or the exhibits that Mr. Adrian allegedly did not review.

■ Defendant also argues that the series of continuances and postponements in this case prevented the panel from making a full review of the evidence.[5] The record reflects, however, that Defendant requested or agreed to some of the continuances in this case, *see*

---

4. Indeed, it was Merrill Lynch, not Defendant, who raised an objection to the possibility that Mr. Adrian might not have had access to all of the exhibits. Merrill Lynch's objection was overruled by the panel as premature inasmuch as the panel reasoned that the other arbitrators could share their exhibits with Mr. Adrian. *See* Exh. 10 to Doc. No. 32.

5. This latter argument is discussed in subsections 3(i) and (ii) below in the context of Defendant's assertion that Plaintiffs conspired to ensure the unavailability of three witnesses and tried to suborn Ms. McHugh's perjury.

Exhs. 11 & 12 to Doc. No. 32, did not object to any of the other continuances or adjournments, *see* Exh. 7 to Doc. No. 32, and did not seek a continuance when certain witnesses were unavailable, *see id.* (Chairman Nodine specifically asked Defendant if he wished the panel to take action to secure the presence of the unavailable witnesses and Defendant declined the offer). Thus, even assuming extreme delays could rise to the level of a "refusal" within the contemplation of § 10(a)(3), the Court is not convinced that that is what happened here.[6] Defendant's motion on this ground is therefore denied.

### 3. Undue Means

Section 10(a)(1) permits vacatur where the arbitration award was "procured by corruption, fraud, or undue means." Defendant contends that Plaintiffs committed such misconduct, by conspiring to secure the unavailability of witnesses, suborning perjury, causing the redaction of documents by falsely asserting privilege, and engaging in a series of procedural maneuvers designed to inhibit the presentation of Defendant's case.

### (i) Unavailability of Witnesses

 Defendant asserts that Plaintiffs conspired to secure, at the tail end of the arbitration, the unavailability of three crucial witnesses: David McWilliams, Virginia Flippen and Tracie McHugh. To be sure, these witnesses were important,—David McWilliams, a party to the action, supervised Defendant and was the principal decisionmaker involved in Defendant's termination; Tracie McHugh is the only person to have witnessed the alleged letter opening incident upon which Defendant's termination was based,— but the importance of their appearance at the end of the hearing process is unclear.

6. *See* subsection 3(ii) below. Even with respect to the admission of Ms. McHugh's testimony, it strains logic to find that the panel "refused" to hear her testimony or that Plaintiffs conspired to suppress her testimony when Defendant is clearly equally (if not primarily) responsible for the omission of her testimony.

7. The Court is not entirely convinced that Ms. McHugh's testimony would have materially affected the outcome of the hearing. As discussed

For the most part, Defendant has failed to articulate, much less support with evidence, what he hoped to prove with these witnesses and how (if at all) such evidence would have affected the outcome of the arbitration process. The only exception is Ms. McHugh. As described in more detail in subsection (ii) below, Defendant asserts that Ms. McHugh would have testified that she never witnessed the famed letter opening incident (upon which Mr. Lambros' termination was ostensibly based) and that Plaintiffs tried to conceal or compromise her recollection of the facts.

While Ms. McHugh's testimony may have strengthened Defendant's case,[7] the Court does not find this argument compelling inasmuch as Defendant was equally (if not primarily) responsible for the unavailability of these witnesses. All three witnesses were present during the bulk of the hearings, and were available during the presentation of Defendant's case-in-chief. *See, e.g.,* Exh. 19 & 20 to Doc. No. 32 (Flippen present at hearings); Exh. 13 to Doc. No. 32 (McHugh present at hearing); Exh. 23 to Doc. No. 32 (Defendant admits he released McHugh from subpoena). Indeed, Mr. McWilliams had testified on two prior occasions and had been excused by the panel. *See* Exhs. 15 & 16 to Doc. No. 32; *see also* Exhs. 17 & 18 to Doc. No. 32 (Plaintiffs offered to make McWilliams available by telephone). Defendant never asked the panel to compel any witness to attend, did not (despite the opportunity) make a proffer of anticipated testimony, *see* Exhs. 7 & 14 to Doc. No. 32, and did not seek a continuance to secure the presence of these witnesses. *See also* Exh. 7 to Doc. No. 32 (at close of proceedings and in response to panel's question, Defendant stated that while he would have "preferred" the chance to examine the witnesses, he did not see "how this could be accomplished."). Accordingly, Defendant's argument is without merit.

in more detail in Section 4 below, it is possible to interpret the panel's award (i.e., denying damages but ordering the expungement of Defendant's Form U–5) as a finding that Defendant did not open the letter, that Plaintiffs' decision to terminate Defendant was erroneous, but that Plaintiffs' decision was not a pretext for discrimination, a malicious attempt to defame Defendant, or a breach of any other duty owed Defendant.

#### (ii) Perjury

As noted above, Defendant argues that Plaintiffs encouraged Ms. McHugh to falsify her testimony. For an alleged fraud (including perjury) to constitute grounds for vacatur, (i) the movant must establish the existence of fraud by clear and convincing evidence, (ii) the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration, and (iii) the movant must demonstrate that the fraud materially related to an issue in the arbitration. *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir.1988).

In the instant case, Defendant asserts that Plaintiffs are lying about the letter opening incident, the incident upon which Defendant's termination was ostensibly based, and encouraged Ms. McHugh, the sole witness to the incident, to commit perjury. Until recently, Defendant offered no proof for this accusation, except for a self-serving, hearsay affidavit from Defendant's counsel. On January 13, 1998, however, Defendant filed an affidavit of Tracie McHugh (Doc. No. 35) which lends some support to Defendant's accusations. In the affidavit, Ms. McHugh states that she never saw Mr. Lambros open the letter. Indeed, Ms. McHugh states that she was told by another employee (Mr. Payson) that the letter opening incident was only the "official reason" for terminating Mr. Lambros and that he was fired for a "different reason." Ms. McHugh states that in going over her testimony, she received a "mixed message" from Plaintiffs' counsel: they said they wanted her to tell the truth, but then "tried to tell [her] what the truth was." Ms. McHugh claims Plaintiffs' counsel went so far as to suggest that she "remember differently" the incident.

Putting aside the fact that this affidavit comes more than a full month after Plaintiffs filed their response to the motion to vacate, the Court does not find it sufficient grounds for vacatur. First, Ms. McHugh's testimony is by no means clear and convincing: Ms. McHugh herself admits that she was receiv-

ing "mixed signals," and while Plaintiffs may not have been in a hurry to put Ms. McHugh on the stand, there is a vast difference between an effort to de-emphasize the weaknesses in a case and an express direction to commit perjury.

More importantly (and as has been described above), the Court believes that Ms. McHugh's testimony was discoverable in the exercise of due diligence. While Defendant may wish to cast Ms. McHugh's unavailability as owing to a nefarious plot to suppress her testimony, the fact remains that Defendant did not move to compel her appearance or move for a continuance. In this sense, it is difficult to see how the alleged efforts to suborn Ms. McHugh's perjury affected the outcome of the proceedings when, in fact, she never testified, much less committed perjury.[8]

As even a cursory review of the statutory grounds for vacatur and the case law on this subject indicate, the Court's role in reviewing an arbitration award is to ensure that the hearing process comports with the broad contours of procedural fairness and arbitrator impartiality. To this end, the Court is directed to consider a narrowly circumscribed set of third party misconduct (such as an arbitrator's refusal to hear evidence or an opponent's fraudulent suppression of evidence). Barring such misconduct, the Court is not empowered to assess evidence, much less new evidence, that was not presented to the arbitration panel, especially when the omission of such evidence is owing, at least in part, to the movant's own failure to vigorously prosecute his case before the panel. Defendant's motion on this ground is denied.

#### (iii) Fraudulent Redaction

Defendant next argues that Plaintiffs falsely asserted the attorney-client privilege so they could excise material information from important documents. The Court finds little merit to this argument inasmuch as the record reflects that the arbitration

---

**8.** Indeed, Ms. McHugh states in her affidavit that had she been called to testify, she was ready to tell the truth, notwithstanding the alleged pressures placed upon her by Plaintiffs. The Court also notes that Defendant has not pointed to any specific record testimony that would have been impeached, much less shown to be perjurious, had Ms. McHugh testified.

panel, not Plaintiffs, decided what information should be redacted after an in camera review of the materials, see Exhs. 26, 27 & 29 to Doc. No. 32, and Defendant has failed to show (with clear and convincing evidence) that Plaintiffs fraudulently withheld or redacted any document without first obtaining the panel's approval. In any event, the Court does not find the documents to which Defendant specifically refers terribly compelling.[9] Defendant's motion on this ground is denied.

### (iv) Procedural Maneuvering

 Defendant argues that Plaintiffs' actions (in requesting continuances, in moving to recuse Mr. May, in threatening to recuse Mr. Nodine) were calculated to inhibit the presentation of Defendant's case. As described above, however, Defendant did not object, and in some cases agreed to, these actions. As for the recusal of Mr. May, Defendant does not articulate a specific challenge to the grounds upon which the recusal was granted. In any event, the Court is not convinced that any of the alleged misconduct is serious enough to constitute "corruption, fraud, or undue means" under § 10(a)(1). Defendant's motion on this ground is without merit.

### (4) Arbitrary and Capricious

Defendant argues that the panel's award is arbitrary and capricious inasmuch as the panel ordered that negative comments be expunged from Mr. Lambros' Form U–5, but did not award any damages for defamation.

 The arbitrary and capricious standard is extremely deferential. Vacatur is

permitted only if a ground cannot be inferred from the facts in the case. *Ainsworth v. Skurnick,* 960 F.2d 939, 941 (11th Cir.1992) (quoting *Raiford,* 903 F.2d at 1413). This is considered a simple rational basis test. *Brown v. Rauscher Pierce Refsnes, Inc.,* 994 F.2d 775, 779 (11th Cir.1993).

 In the present case, the Court cannot say that there is no rational basis upon which the panel decided not to award damages to Defendant. In the first place, Defendant did not request anything more than equitable relief for the alleged defamation. *See* Exh. 32 to Doc. No. 32. In the second place, it is entirely possible that the panel did not find defamation, but still found that expungement of the Form U–5 was appropriate. For example, the panel could have believed Mr. Lambros that the letter opening incident did not occur, and consequently ordered the expungement; at the same time, the panel could have believed that Merrill Lynch and Mr. McWilliams genuinely believed that the letter opening incident had occurred, and that no specific intent to defame Mr. Lambros existed. Accordingly, the Court cannot say that the panel's award is arbitrary and capricious.

### C. Conclusion

Notwithstanding the large array of challenges lodged by Defendant, the Court finds little merit to Defendant's motion to vacate. Although Defendant filed some 1,500 pages of hearing transcripts and exhibits, Defendant's motion makes little reference, much less specific citations, to any record evidence of bias, abuse, or prejudice.[10] Such a display

---

9. Most of the documents to which Defendant refers apparently concern customer complaints (accumulated over two or more years) that Mr. Lambros was churning accounts. It is difficult to see how such complaints could generate more sympathy for Mr. Lambros, much less support an action under the ADA or ERISA.

Defendant also argues that one document (a set of notes apparently taken by Ms. Flippen in January, 1994) exposes Merrill Lynch's "true motive" for firing Mr. Lambros: the fear that Mrs. Lambros (who had recently taken a job as a broker for a competitor) might take some of Mr. Lambros' "book" away from Merrill Lynch. Even assuming (which the Court does not) that Ms. Flippen's notes were not presented to the

panel for possible redaction, the notes clearly memorialize a conversation with in-house counsel and are a paradigmatic example of privileged communications.

10. This Court is "not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts." *United States v. WRW Corp.,* 986 F.2d 138, 143 (6th Cir.1993). *See also Jones v. Sheehan, Young & Culp, P.C.,* 82 F.3d 1334, 1338 (5th Cir.1996) (Rule 56 "does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition.").

is particularly disheartening given the purpose of arbitration, "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation." *Booth v. Hume Publishing, Inc.*, 902 F.2d 925, 932 (11th Cir.1990). There is no shortage of case law on this topic and Defendant has had ample time to make his case for vacatur.[11]

Accordingly, it is **ORDERED** and **ADJUDGED** that Plaintiff's Motion to Vacate or Modify Arbitration Award (Doc. No. 10) is **DENIED.** The Award is hereby **CONFIRMED,** and the Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida, this 6th day of March, 1998.

---

**11.** Following the filing on July 10, 1997 of Plaintiffs' petition to confirm, Defendant immediately moved for a stay of action on the petition, arguing that the FAA gives a party three months to file a motion to vacate. Although the Court questioned the legal basis for such a stay, it left Defendant's motion pending, effectively giving Defendant the stay he requested. Defendant filed his motion to vacate the award on September 30, 1997, almost three months after Plaintiffs filed their petition for confirmation. Notwithstanding the additional time, Defendant did not file the McHugh Affidavit (Doc. No. 35) (which affidavit, the Court adds, is quite possibly the only substantive piece of evidence filed by Defendant), until January 13, 1998.