[No. 39380-4-I. Division One. March 8, 1999.]

SEATTLE PACKAGING CORPORATION, *Appellant*, v. DONALD E. BARNARD, *Respondent*, GORDON YOUNGER, *Appellant*.

GROSSE, J., concurs by separate opinion.

*James O. Lyons* and *John D. Alkire* of *Perkins Coie*, for appellants.

*Chris R. Youtz* of *Sirianni & Youtz*, for respondent.

KENNEDY, C.J. — Perjury materially related to an issue of consequence in an arbitration proceeding constitutes fraud in the procurement of an arbitration award within the meaning of RCW 7.04.160, and requires vacatur if substantial rights of a party were prejudiced thereby. A party seeking vacatur of an arbitration award on grounds of perjury must (1) show by clear and convincing evidence that perjury materially related to an issue of consequence in the arbitration proceeding was in fact committed; (2) demon-

strate that the alleged perjury could not reasonably have been discovered in the exercise of due diligence before the close of the arbitration hearing; and (3) demonstrate that that the alleged perjury operated to prevent the party from fully and fairly presenting his or her case or defense. In the absence of a prima facie showing with respect to these factors, the court is not empowered to assess evidence, much less new evidence that was not timely submitted to the arbitrators, in responding to a request for vacatur. Because the moving parties failed in the instant case to make a prima facie showing requiring further factual inquiry by the trial court, summary judgment confirming the arbitration award was appropriate. Accordingly, we affirm the trial court's confirmation of the arbitration award.[1]

## FACTS

In 1989, respondent Donald Barnard and appellants Seattle Packaging Corporation (SeaPak) and Gordon Younger signed an agreement under which SeaPak and Younger would acquire Barnard's interest in SeaPak. The agreement set the value of the interest between $4.5 million and $7 million. The agreement also provided that the parties would submit to binding arbitration if they were unable to reach an agreed value of Barnard's interest by January 1, 1995.

When the parties were unable to reach an agreed value, Barnard demanded arbitration. After a hearing, the three-member arbitration panel determined the value of Barnard's interest in SeaPak to be $5.6 million. Then, in accord with a stipulation of the parties that the arbitrators should open a sealed envelope after determining the value of Barnard's interest and adjust their award in accord with the contents of the sealed envelope, the arbitrators did so and adjusted the total arbitration award upward to $5,889,956. The arbitrators also ruled that consulting fees

---

[1]The appellants' remaining assignments of error, which we find to be without merit, are treated in the unpublished portion of this opinion.

and expense reimbursements previously paid to Barnard should not be deducted from the total arbitration award.

When the award was initially issued, it was signed by only one of the three arbitrators, contrary to the rules of the American Arbitration Association. SeaPak and Younger objected. Before the arbitrators reissued the award bearing all three signatures, SeaPak filed a motion to reopen the arbitration hearing based on the discovery of alleged perjury by Barnard and Barnard's expert witness, David Solomon, during the arbitration hearing. The arbitrators denied the motion and reissued the award signed by all three arbitrators.

SeaPak sought declaratory relief in King County Superior Court, alleging that Barnard procured the award in violation of RCW 7.04.160. That statute requires, in pertinent part, that the court vacate the award upon the application of any party to the arbitration where the award was procured by corruption, fraud or other undue means, if the court is satisfied that substantial rights of the parties were prejudiced thereby. Barnard counterclaimed against Sea-Pak and impleaded Younger as a third party defendant, seeking confirmation and immediate payment of the arbitration award.

SeaPak moved to stay enforcement of the arbitration award pending a hearing on its motion to vacate the award based on the alleged perjury. By motion for summary judgment, Barnard moved to confirm the award. The court denied SeaPak's motion to stay enforcement and granted Barnard's motion to confirm the award. This appeal followed.

## DISCUSSION

SeaPak and Younger contend that the trial court erred by denying SeaPak's motion to vacate the arbitration award and by granting summary judgment to Barnard without holding the evidentiary hearing requested in the appellants' motion to stay enforcement of the award.

■■ An arbitration award may be vacated only upon a showing of proper statutory grounds, and the party seeking vacatur has the burden of making that showing. *Harris v. Grange Ins. Ass'n*, 73 Wn. App. 195, 198, 868 P.2d 201 (1994). The relevant statute provides:

> In any of the following cases the court shall after notice and hearing make an order vacating the award, upon the application of any party to the arbitration:
>
> (1) Where the award was procured by corruption, fraud or other undue means.
>
> . . . .
>
> An award shall not be vacated upon any of the grounds set forth under subdivisions (1) to (4), inclusive, unless the court is satisfied that substantial rights of the parties were prejudiced thereby.

RCW 7.04.160.

■ A threshold question of first impression in Washington is whether perjury during an arbitration hearing constitutes fraud within the meaning of RCW 7.04.160. Federal authority interpreting similar statutes can provide guidance in resolving issues of first impression. *ML Park Place Corp. v. Hedreen*, 71 Wn. App. 727, 742, 862 P.2d 602 (1993). Section 10 of the Federal Arbitration Act provides:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (1) Where the award was procured by corruption, fraud, or undue means[.]

9 U.S.C.A. § 10 (Supp. 1997).

■ In *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 n.7, 1386 (11th Cir. 1988), the court held that perjury constitutes fraud under section 10, and vacated the arbitration award. *Id.* at 1383 n.7 (citing *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir. 1982)). We

agree, and hold that an arbitration award procured by perjured testimony as to a material fact of consequence in the arbitration proceedings constitutes fraud within the meaning of RCW 7.04.160(1).

■ For an alleged fraud, including perjury, to constitute grounds for vacatur, the moving party must establish the existence of fraud by clear and convincing evidence; the fraud must not have been discoverable upon the exercise of due diligence before the close of the arbitration hearing; and the moving party must demonstrate that the fraud materially related to an issue of consequence in the arbitration. *Bonar*, 835 F.2d at 1383. Although the moving party does not need to show that the result of the proceedings would have been different if the fraud had not occurred, he or she must show that the fraud prevented him or her from fairly and fully presenting his or her case or defense. *Id.* Fraud not reasonably discoverable by the exercise of due diligence before the close of the arbitration hearing that prevents a party from fairly and fully presenting his or her case or defense constitutes prejudice of substantial rights of the party.

■ Courts do not ordinarily consider evidence presented to the arbitrators. This is because courts are generally prohibited from reviewing an award on the merits. *E.g.*, *Price v. Farmers Ins. Co.*, 133 Wn.2d 490, 496-97, 946 P.2d 388 (1997); *Barnett v. Hicks*, 119 Wn.2d 151, 153, 829 P.2d 1087 (1992). The court's role in reviewing an arbitration award is to ensure that the hearing process comports with the broad contours of procedural fairness. To this end, the court is directed to consider narrowly circumscribed allegations of misconduct. Without a prima facie showing of such misconduct, the court is not empowered to assess evidence, much less new evidence not presented to the arbitration panel. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lambros*, 1 F. Supp. 2d 1337, 1345 (M.D. Fla. 1998).

■ ■ In cases where the claimant contends that an arbitration award was procured by fraud, including perjury, courts must necessarily review enough of the evidence

submitted to the arbitrators to determine whether clear and convincing evidence exists that perjury was committed with respect to a material issue of consequence in the proceedings and that substantial rights of a party have been prejudiced thereby. For example, in *Bonar*, 835 F.2d 1378, the court reviewed the testimony of an expert witness who was discovered after the final arbitration award to have egregiously falsified his credentials as an expert during his testimony before the arbitrators. After determining that the evidence of perjury was clear and convincing, and that the perjury could not reasonably have been discovered before the close of the arbitration hearing, the court noted that the face of the award clearly reflected the influence of the perjured testimony, thus demonstrating prejudice. *Id.* at 1385.

The evidence before the arbitrators may also reveal whether the new evidence could have been discovered in the exercise of due diligence in advance of the hearing, and whether the alleged perjury prevented the moving parties from fully and fairly presenting their case. Here, we must review the evidence to determine whether the trial court ought to have held an evidentiary hearing to determine whether perjury was in fact committed and, if clear and convincing evidence exists that perjury was committed, whether the appellants could thereby demonstrate prejudice to substantial rights as required by RCW 7.04.160.

■ Before examining the evidence, however, we first address Barnard's contention that the court should not consider the evidence of perjury because it was considered and rejected by the arbitrators. It is true that a reviewing court should not vacate the arbitration award if the movant presented the evidence of perjury to the arbitrators. *Kirschner v. West Co.*, 247 F. Supp. 550, 553 (E.D. Pa.) ("Credibility of witnesses is always for the fact finder, and this is especially so when the fact finder is an arbitrator."), *aff'd*, 353 F.2d 537 (3d Cir. 1965). But here, the question is not so simple. SeaPak outlined the alleged perjury to the panel in its motion to reopen arbitration, but the panel

denied the motion to reopen, without explanation, and thus did not "hear" the new evidence during the arbitration hearing when, presumably, credibility determinations were being formed. Under these circumstances, it would be unfair to deny further consideration on grounds that the evidence of perjury was placed before the arbitrators between the time they issued the award signed by one arbitrator and they time they issued the award signed by all three arbitrators.

## The Evidence of Perjury

SeaPak and Younger assert that, at the arbitration hearing, Barnard and his expert witness Solomon testified that they did not think the 1995 sale of an interest in another Pacific Northwest company, Sound Container, was a comparable sale that should be considered in determining the value of SeaPak, because it was not an arm's length transaction and because other consideration had been paid or was to be paid to the seller by the buyer that was not provided for by the purchase and sale agreement.[2] Shortly after the hearing, Keith Thompson, the purchaser in the 1995 Sound Container sale, stated in a sworn declaration that he told Barnard that "the stock purchase was a standard, regular business transaction between a willing buyer and a willing seller" and that in response to a question by Bernard, he had said that "there was no outside consideration, no 'side deal,' no special consideration . . . or any other unusual arrangements or irregularity" in the stock purchase transaction. Clerk's Papers at 41. Further, Leon Gale, the seller in the 1995 Sound Container sale, stated in a sworn declaration that there were no unusual arrangements in the Sound Container transaction and that he

---

[2]The arbitration hearing was not transcribed. SeaPak and Younger's assertions regarding the content of Barnard and Solomon's testimony are contained in letters and notes written at or near the time of the hearing by various witnesses who were present at the hearing. Although Barnard complains that this is not competent evidence of the testimony during the arbitration hearing, his own account of the testimony at the hearing does not materially differ from that of SeaPak and Younger.

described the transaction to a person who called Gale and identified himself as working for Barnard, as "a standard, regular business transaction between a willing buyer and a willing seller." Clerk's Papers at 45.

In a responding declaration, Barnard maintained that nothing in his testimony at the arbitration hearing was contradicted by the declarations of Thompson and Gale. According to Barnard, shortly before the arbitration hearing he and Solomon jointly participated in a telephone conversation with Leon Gale, who told them that he didn't try to get as much money as he could have for his stock for several reasons: he did not want to push Thompson too far because he needed Thompson's technical advice in setting up a business in Arizona; he was receiving equipment and other assistance from Thompson but did not wish to give them any further information about this. According to Barnard, Gale refused to reveal the purchase price for his stock in Sound Container. Barnard further declared that he testified at the arbitration hearing that he knew that Thompson and Gale were good friends and that, in his opinion, the relationship affected the sales price. He also testified that, in his opinion, Gale's departure from Sound Container would adversely affect that company in that Gale had been the principal salesman for the company. And further:

> [SeaPak's] motion suggests that I testified that Thompson and Gale were not willing buyers and sellers. That is not true. I understood that Gale was willing to sell and Thompson was willing to buy, but it was my belief—and it is still my belief—that their personal relationship affected the price paid for the stock. Gale did not want Thompson to get upset at him, and I believe that this affected the price.

Clerk's Papers at 126.

## The Evidence before the Arbitrators

According to Barnard, Solomon was asked at the arbitration hearing why he did not include Sound Container as a comparable sale in the course of his valuation and Solomon

stated that, in his opinion, it was not an arm's length transaction because of the relationship between buyer and seller and because it appeared there was other consideration besides the stock that was being provided as part of the sale. Barnard also avers that one of SeaPak's own experts testified at the arbitration hearing that loss of a key man can adversely affect a company's value.

The record on appeal contains Solomon's valuation report and written narrative testimony submitted to the arbitrators. He utilized three distinctive valuation methodologies, only one of which was based on comparable sales. He opined that the value of Barnard's ownership interest in SeaPak, as of December 31, 1994, was $9.8 million.

One of SeaPak and Younger's experts, Tony Leung, testified at the arbitration hearing that he was able to ascertain the EBITDA multiple (a comparison of the consideration received for the sale of a company with its "earnings before interest, taxes, depreciation and amortization") for the Sound Container sale, which he believed to be a comparable sale, and it was 4.5, indicating a value for Barnard's stock of considerably less than the $4.5 million minimum price contained in the contract. Leung also opined that the value of the entire company as of December 31, 1994, not just Barnard's share, was only $4.6 million; thus the minimum price set in the contract would result in a gross overpayment to Barnard.

At the close of the hearing, the arbitrators requested the parties to include discussion of the significance of the Sound Container transaction in their final briefs. In its final arbitration brief SeaPak emphasized the reliability of the EBITDA multiple for Sound Container that Leung had obtained, as reflected by the very similar EBITDA multiples for sales of other companies like Sound Container and Sea-Pak, that had been testified to by other experts in the case. SeaPak also characterized Barnard and Solomon's report of their conversation with Leon Gale as "rank hearsay" and argued that "[t]here is simply nothing to indicate other than a willing buyer-willing seller transaction." Clerk's Papers at 399.

We agree with SeaPak and Younger that whether the Sound Container sale was a comparable sale was an issue of consequence at the arbitration hearing. Although we have considerable doubt that a finder of fact would be persuaded that perjury actually occurred, we can agree that SeaPak and Younger have made a prima facie case of perjury. But we cannot conclude, on this record, that the alleged perjury could not have been discovered in the exercise of reasonable diligence before the close of the arbitration hearing or that the alleged perjury prevented SeaPak and Younger from fully and fairly presenting their case with respect to whether the Sound Container sale was a comparable sale.

Barnard and his appraiser obtained the information they presented to the arbitrators by the simple expediency of picking up the telephone and calling the principals of the Sound Container sale. SeaPak and Younger took the position that the Sound Container sale was a comparable sale; yet they have failed to explain, below or for this appeal, why they or Mr. Leung did not pick up the telephone and call the principals, themselves, in preparation for their case. Courts routinely deny motions to vacate arbitration awards where fraud would have been discoverable in the exercise of due diligence prior to or during the arbitration. *E.g.*, *Karppinen v. Karl Keifer Mach. Co.*, 187 F.2d 32, 35 (2d Cir. 1951); *Lambros*, 1 F. Supp. 2d at 1337.

Moreover, it is clear from the record that although Sea-Pak and Younger presented evidence that the Sound Container sale was comparable, it was not the only comparable sale presented by the various experts; other comparable sales were presented, as well, some bearing EBITDA multiples very similar to that of Sound Container. Indeed, comparable sales were not the only valuation method utilized by the various experts. Insofar as we can ascertain from the incomplete record of the arbitration proceedings, each appraiser utilized various methodologies in reaching his ultimate opinion of value. Thus, it appears that the alleged perjury did not prevent SeaPak and Younger from fully presenting their case.

 The test for determining whether an arbitration award has been procured by fraud has been compared to the test for setting aside a judgment under CR 60(b) by reason of fraud. *See Bonar,* 835 F.2d at 1383 n.8 (citing *Harre v. A.H. Robins Co.,* 750 F.2d 1501, 1503 (11th Cir. 1985)) (that the tests are nearly identical is not surprising considering that both the arbitration statute and rule 60(b) counteract the strong policy favoring the finality of awards and judgments; thus, cases arising under rule (60(b) are persuasive authority in deciding cases under the arbitration statute), *vacated in part on other grounds by* 866 F.2d 1303 (11th Cir. 1989)).

*Peoples State Bank v. Hickey,* 55 Wn. App. 367, 777 P.2d 1056 (1989), is instructive in this regard. There, a decree of foreclosure was entered by default after proper service upon and failure to appear by one Hickey, who claimed an interest in the property. In obtaining the default judgment, the bank misrepresented to the court that Hickey's lien was inferior and subordinate to that of the bank. In fact, this was not so—Hickey's lien was superior to that of the bank. But Hickey slept on her rights and failed to move to set aside the default judgment within one year. After that deadline had passed, she moved to vacate the judgment under CR 60(b), citing the misrepresentation by the bank, without which her property rights would not have been foreclosed. This court denied relief despite Hickey's strong showing of material misrepresentation, stating:

> The rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect. For this reason, the conduct must be such that the losing party was prevented from fully and fairly presenting its case or defense. Applying the above authorities to the facts at bar, we find vacation of the default judgment is not warranted. Although [the bank] misrepresented the status of Hickey's lien, there is no connection between the bank's misrepresentation and Hickey's failure to respond to the complaint or employ an attorney. There is no evidence that Hickey relied on the misrepresentation or was misled by [the bank's] statements in the complaint. . . . The misrepresentation having nothing to do with her failure

to respond to the summons and complaint, Hickey cannot meet the requirement that the misrepresentation must have operated to prevent her from fully and fairly presenting her case.

*Peoples State Bank*, 55 Wn. App. at 372 (citations and footnote omitted).

Similarly, here, SeaPak and Younger cannot demonstrate that the alleged perjury operated to prevent them from fully and fairly presenting their case. Although they relied upon the Sound Container sale as a comparable sale, they never contacted the principals of the sale to ascertain whether it was an arm's length transaction before the close of the arbitration hearing. At the arbitration hearing they had the opportunity to present all the evidence they wished to present with respect to that sale. That they were able to contact the principals of the Sound Container sale immediately after hearing the testimony of Barnard and Solomon indicates that they just as easily could have done so before the hearing—as Barnard and Solomon testified that they did.

In their final arbitration brief, SeaPak and Younger characterized Barnard's and Solomon's testimony regarding their communications with the principals of the Sound Container sale as rank hearsay and entitled to no weight whatsoever. They are unable to demonstrate from the face of the award that the arbitrators placed any weight whatsoever on the challenged testimony. The amount of the award reflects that the arbitrators may very well have rejected the allegedly perjured testimony, in that the award falls far short of the opinion of value rendered by Solomon. Contrary to the appellants' apparent belief that the arbitrators' failure to adopt their expert's opinion of value in and of itself demonstrates that the award was procured by fraud, the award merely demonstrates that the arbitrators concluded that the truth lay somewhere in between the extremes of conflicting expert testimony regarding complex valuation issues. Indeed, from a mathematical standpoint, the award is closer to Leung's proposed value than to Solomon's.

We conclude that the trial court did not err. We are not satisfied that substantial rights of the appellants were prejudiced by the alleged perjury as required by RCW 7.04.160.

We affirm the trial court's denial of SeaPak and Younger's motion to stay enforcement of the arbitration award and to conduct an evidentiary hearing on their motion to vacate the award; we also affirm the grant of Barnard's motion to confirm the award.

The remainder of this opinion lacks precedential value and will not be published in the Washington Appellate Reports but will be filed of record in accord with RCW 2.06.040.

WEBSTER, J., concurs.

GROSSE, J. (concurring) — I agree that we should affirm the trial court's confirmation of the arbitration award, but write separately to emphasize what I believe to be the correct analysis in these circumstances.

First, perjury in the course of an arbitration proceeding can and should constitute fraud as that concept is used in the applicable statutes. Second, and more important to the quandary posed by this case, the process by which to raise a challenge to an arbitration is a fact specific inquiry for the superior court, an inquiry that is not restricted by the doctrine that subsequent judicial review of an arbitration award cannot go behind the face of the award. Rather, it is incumbent on the party challenging the award to produce a prima facie case establishing that perjury occurred, and that the perjury materially affected the outcome of the proceeding.

Neither circumstance was established here. Certainly, who said what and when with regard to a comparable sale is disputed, but that dispute is no more than the proverbial swearing contest, in contrast to perjury. Moreover, the record reveals this comparable sale to have been no more than "some" of the substantial evaluation evidence presented to

the arbiters. The appellants did not establish a prima facie case requiring further factual inquiry by the trial court. Summary judgment was appropriate.

As a final note, I do not disagree that CR 60(b) provides a good analogous analytical framework for the determination of whether fraud materially affected the outcome. However, *Peoples State Bank v. Hickey*, 55 Wn. App. 367, 777 P.2d 1056 (1989), was wrongly decided, even while reciting the correct principle, and I would not give the case the further dignity of relying on it here.