# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LEIBSOHN PROPERTY ADVISORS INCORPORATED, a Washington corporation, d/b/a LINC PROPERTIES, | ) ) ) ) |
| | NO. 69445-6-I |
| | DIVISION ONE |
| Appellant/Cross Respondent, | ) ) |
| v. | ) ) |
| COLLIERS INTERNATIONAL REALTY ADVISORS (USA), INC., a California corporation, and ARVIN VANDER VEEN and JANE DOE VANDER VEEN, and their marital community, and CITY OF SEATAC, a municipal corporation, | ) ) ) ) ) ) ) |
| | UNPUBLISHED OPINION |
| | FILED: October 28, 2013 |
| Respondents/Cross Appellants. | ) ) |

LAU, J. — A superior court's authority in a chapter 7.04 RCW arbitration proceeding is limited. It can confirm, vacate, modify, or correct the arbitration award under RCW 7.04.050. A court can vacate such an award only on narrow grounds prescribed by statute. Because the trial court lacked statutory grounds to vacate the arbitration decision here, we reverse the court's order denying Colliers and Vander

Veen's motion to confirm and remand with instructions to confirm the decision and vacate the sanctions imposed against those parties. But because Brian Leibsohn (1) fails to show a material issue of fact on each element of his tortious interference claim against SeaTac and (2) the transaction here was a "deed in lieu of foreclosure" within the meaning of Leibsohn's listing agreement, the trial court properly granted summary judgment dismissal in favor of SeaTac and properly denied Leibsohn's motion for partial summary judgment. We affirm in part, reverse in part, remand with instructions to confirm the arbitration decision, and award appellate attorney fees and costs to Colliers and Vander Veen.

## FACTS

### SeaTac Property

This case involves a dispute over a commercial real estate sales commission. K&S Developments Inc. formerly owned commercial real property in the City of SeaTac.[1] Leibsohn Property Advisors, Inc.[2] is a commercial real estate broker and member of the Commercial Brokers Association (CBA). Leibsohn first listed the SeaTac property for K&S in 2006 under an exclusive sale listing agreement. Leibsohn and K&S extended the agreement twice—once in 2007 and again in 2008—with no material changes to its terms.

Leibsohn listed the property as high as $28.5 million. According to the 2008 listing agreement (executed in November 2008), the asking price was $24.5 million.

---

[1] The property is sometimes referred to in the record as SeaTac Center.

[2] Leibsohn Property Advisors Inc. is owned by Brian Leibsohn. We refer to these entities collectively as "Leibsohn."

The 2008 agreement contained a tail provision entitling Leibsohn to a commission if a sale occurred within six months of the agreement's expiration if the purchaser had submitted an offer when the agreement was in effect. The agreement provided for a commission to Leibsohn of 4 percent of the sales price, up to a maximum of $490,000.

The SeaTac property was burdened by several debts secured by deeds of trust on the property. The following chart[3] shows the principal amounts of the obligations on the property, the known default amounts, and the eventual payoff amounts:

| Lender/obligation | Principal amount | Principal plus default amounts and fees | Eventual payoff |
|---|---|---|---|
| Avatar | $6,500,000 | $7,434,837.48 | $7,150,000 |
| Centrum | $4,500,000 | $7,840,643.72 | $4,000,000 |
| Velocity | $560,000 | $560,000, plus uncertain | $100,000 |
| Kirby | $560,000 | $560,000, plus uncertain | $100,000 |
| Back taxes | $562,623.55 | $562,623.55 | $562,623.55 |
| Mechanics liens | $26,021.71 | $26,021.71 | $26,021.71 |
| Total | $12,708,645.26 | $16,984,126.46, plus uncertain | $11,938,645.26 |

All four loans included personal guarantees from K&S's owners, Scott Switzer and Gerald Kingen.

The City of SeaTac was interested in acquiring land to further its long-term transportation corridor plans. In November 2007, SeaTac retained Colliers International Realty Advisors Inc. to assist it in identifying potential properties. Arvin Vander Veen is

---

[3] This chart is found at page 4 of SeaTac's appellate brief. Leibsohn does not challenge the numbers or calculations.

Colliers's senior vice president. By summer 2008, Colliers identified the property at issue here as a potential acquisition that fit SeaTac's objectives. Colliers knew Leibsohn was the exclusive listing agent for the property. Colliers and SeaTac agreed that SeaTac's identity would not be disclosed to K&S in pursuing the property. Leibsohn had regular contact with Colliers and provided it with marketing materials on the property. SeaTac believed a reasonable purchase price was between $11 million and $11.5 million. At that time, Leibsohn was still listing the property for over $28 million, so SeaTac did not ask Colliers to pursue it. In November 2008, Leibsohn notified the local real estate brokers that the price had been reduced by $4.1 million, but SeaTac thought this price was still too high.

### Default, Foreclosure, and Deed in Lieu Proposal

By spring 2009, K&S defaulted on its loan obligations. In May 2009, Centrum began foreclosure proceedings against K&S, Switzer and Kingen personally, and several junior lienholders. SeaTac was named as a defendant because it had a lien on the property and its interest would be subject to foreclosure in the proceeding. Centrum sought relief including a foreclosure sale of the property and deficiency judgments against Switzer and Kingen based on their personal guarantees.

In late June 2009, SeaTac contacted Colliers "wishing to discuss the fact that the loans secured by the Property were in default and that the Property was subject to a judicial foreclosure proceeding." At that time, Leibsohn was marketing the property for $21 million, still far above what SeaTac considered a reasonable price. Vander Veen reviewed the title reports and determined the property had about $13 million in debt. With that amount of debt, Vander Veen "did not believe it was possible for SeaTac to

acquire the Property by making an offer to purchase the Property directly to the Property's owners, K & S Developments." Vander Veen thus "came up with the idea of trying to purchase the debt that was encumbering the Property," allowing SeaTac to either complete the judicial foreclosure or attempt to acquire the property in exchange for deeds in lieu of foreclosure. Vander Veen contacted Tom Hazelrigg, described as "the king pin between all [the] lending entities," for help in structuring the transaction. Hazelrigg was a co-member of Centurion Financial Group LLC with Scott Switzer and a personal guarantor on much of the property's debt.

Colliers began negotiating with the lenders. During the summer 2009, Colliers, with Hazelrigg's assistance, was able to obtain significant discounts from K&S's creditors. Kirby and Velocity were willing to release their liens for $100,000 each, despite being owed $560,000 each in principal. Centrum agreed to sell its promissory note for $4 million. Colliers negotiated with Avatar to purchase its note for $7,150,000 (consisting of the original principal balance of $6.5 million, plus an exit fee of $650,000). By late September 2009, SeaTac understood it would be able to acquire all the K&S debt for $11,350,000.

By October 2, Colliers also confirmed that K&S and its two principals, Kingen and Switzer, were willing to provide deeds in lieu of foreclosure in exchange for the release of their personal guarantees, if and when the four creditors sold their notes to SeaTac. The parties' communications reveal that they structured the transaction to avoid excise tax[4] and to avoid paying Leibsohn's commission.

---

[4] No real estate excise tax is due on a deed in lieu of foreclosure where no additional consideration passes between the parties. WAC 458-61A-208(3)(a).

Amendment to Listing Agreement

On November 1, 2009, Leibsohn's 2008 listing agreement was set to expire. Leibsohn met with K&S's principals in the summer 2009 to discuss an extension. K&S agreed to extend the listing agreement for one year at a reduced price of $14,500,000. In August 2009—after the foreclosure proceedings commenced—Leibsohn prepared a new listing agreement, signed it, and sent it to K&S on August 18. Leibsohn's proposed extension included a lower price but otherwise contained the same terms as the previous agreements.

On September 28, 2009, K&S, Leibsohn, and Centrum met. K&S discussed with Leibsohn a proposal by Vander Veen in which Vander Veen would purchase the notes secured by the property and then obtain a deed in lieu of foreclosure on behalf of an undisclosed principal (SeaTac).

On October 2, 2009, Switzer e-mailed Leibsohn a counterproposal containing an amended listing agreement. The amended listing agreement set the price at $14.5 million and extended the listing agreement to November 1, 2010, and contained Switzer's handwritten exception:

> No commission will be due in the event that the owners sign a deed in lieu of foreclosure. The potential transaction in which a third party may ask the owners to give up the property in exchange for removal of personal guarantees is specifically excluded as part of this sales/fee agreement.

Leibsohn testified in his deposition that the potential transaction Vander Veen was trying to structure was the only one he knew about at the time he received K&S's counterproposal. At the time, Leibsohn believed the new exclusion was "crafted" by Vander Veen and was certain that the change in fee structure was prompted by Vander

Veen's proposed transaction. Switzer notified Leibsohn in writing that the commission exclusion was specifically intended to eliminate Leibsohn's right to a commission on the proposed Vander Veen transaction. "Attached is your signed fee agreement. I wrote in a fee exclusion for the proposed deed in lieu of transaction proposed through Tom Hazelrigg and Arvin Vander Veen."[5] Switzer explained the rationale behind the new exclusion in Leibsohn's amended listing agreement:

> This in our opinion is not a sale of the property but a loss of the property. We have hung in there with you as our broker for over 2 years. . . .
> Short of a sale by you, we will either lose the property to our lenders or lose it to our new note holders in exchange for the deed. We lose and are in a serious negative position unless you can come through. We would gladly pay you a fee for selling the property. We will not pay a fee [to] give up our property to our lenders, no matter who they may be.

After receiving K&S's counterproposal, Leibsohn never discussed the new exclusion language with K&S. Leibsohn communicated directly with Vander Veen, sending him an e-mail on October 2 alleging that the proposed transaction amounted to K&S and Vander Veen "going around" Leibsohn without paying a commission. Leibsohn did not immediately sign the October 2 counterproposal. Leibsohn finally signed the new listing agreement on November 23, 2009, but he backdated it to October 2, 2009. He testified in his deposition that he never told K&S he had signed the amended agreement, but "the purpose of the amendment was to extend the term and continue our existing relationship. So I think that it was understood that I would

---

[5] According to Leibsohn, Switzer was not only an owner of K&S but also a partner with Hazelrigg in Centurion Financial Group LLC. Switzer thus acted in several different capacities regarding the property.

continue as their broker with their best interests." Leibsohn performed according to the new agreement by sending out marketing materials advertising the new price.

Before executing the October 2, 2009 counterproposal, Leibsohn submitted a complaint to the CBA dated October 13, 2009. Leibsohn alleged that Vander Veen was tortiously interfering with his listing agreement and requested arbitration. Nevertheless, Leibsohn then executed the October 2, 2009 counterproposal as discussed above and later sent it to the CBA as a supplement to his complaint.[6]

Closing

Meanwhile, Vander Veen's proposed deed in lieu of foreclosure transaction proceeded to closing. Centrum and Avatar executed agreements dated November 24, 2009, to sell their loans to Vander Veen on behalf of an undisclosed principal (SeaTac). Centrum and K&S signed a deed in lieu of foreclosure agreement on approximately December 24, 2009, under which K&S agreed to transfer the property to Centrum or its assigns in exchange for forgiveness of the loans to K&S. The deal also released Kingen and Switzer from most, but not all, of the loan guarantees they had signed.[7] The transaction closed on December 31, 2009. SeaTac received title to the property through a deed in lieu of foreclosure executed by K&S. Kingen and Switzer received releases from the personal guarantees they had signed on the Avatar and Centrum loans. The final settlement statement indicates K&S received no proceeds from the

---

[6] We discuss the CBA complaint and proceedings in detail below.

[7] Kingen and Switzer remained personally obligated on personal guarantees they had made in securing the Velocity loans. Velocity is currently suing them for over $2.1 million.

transaction. The loss of its sole asset made K&S insolvent. Hazelrigg received a $25,000 fee and Colliers and Vander Veen received a $275,000 "commission" for their part in the transaction.

Leibsohn received no commission. He testified that he asked K&S for a commission but was told that none was due because the transaction was a deed in lieu of foreclosure. Before the transaction closed, K&S gave Leibsohn a detailed written explanation of why no commission was due. K&S stated, "Our lenders are in a foreclosure action against us. . . . Unless we (and you as our broker) find a buyer or venture partner, we will lose the property through our lenders foreclosure action." K&S continued, "If we decide to [sign] the deed in lieu of foreclosure with our lenders we are not receiving any compensation. This is not a sale."

The Department of Revenue (DOR) reviewed the property transfer and determined it "was a sale and that the claimed exemption under WAC 458-61A-208(3)(a) for a transfer by deed in lieu of foreclosure did not apply." In October 2010, DOR issued a warrant to K&S for unpaid real estate excise taxes for $300,711.16. K&S contests that excise tax is due. At the time of summary judgment, DOR had not made a final determination.

Procedural History

CBA Complaint and Communications

Leibsohn never sued K&S for his commission. As noted above, Leibsohn e-mailed a complaint to the CBA in October 2009, alleging that Vander Veen was

tortiously interfering with his listing agreement and requesting arbitration.[8]  At the time,

Vander Veen was treasurer of the CBA and on its board of directors.  On October 21,

2009, CBA Vice President Mary Lyell-Larsen responded:

> CBA staff . . . has concluded that your complaint against Mr. Vander Veen cannot be arbitrated by CBA, for two primary reasons:  First, you and your client not only struck all of the language in your listing agreement pertaining to CBA, but further affirmatively stated that "Broker shall not be required to comply with any CBA regulations." . . . . [W]e believe that your actions in striking all of paragraph 6 of the listing agreement deprives you and your client of the right to force another CBA member into arbitration.
> Second, your complaint alleges that Colliers and Mr. Vander Veen "directly solicited the lenders."  Your listing is with the owner of the property, not its lenders.  Because you have no[] listing with the lenders, there is nothing that CBA could do about Mr. Vander Veen's conduct with regard to the lenders, even if the allegations are correct.

Lyell-Larsen instructed Leibsohn to conduct all future communication with CBA attorney

Chris Osborn.

On October 23, Osborn wrote to Leibsohn explaining CBA's procedures for

complaints alleging rule violations and confirming that Leibsohn's claim was not

arbitrable:

> The multitude of questions you have asked about CBA's administration regarding its <u>arbitration</u> processes and Rules are irrelevant because your complaint pertained to a Rule violation and not a matter which is [] arbitrable between members.  As you no doubt noted, CBA's arbitration process is available only for commission disputes between members, and then only after a closing has occurred; neither circumstance exists here.  Accordingly, CBA respectfully declines to answer questions that have nothing to do with your rejected complaint.
> . . . .
> . . . CBA has no authority whatsoever to interject itself into your dispute with Colliers and Mr. Vander Veen.

---

[8] Both Colliers and Leibsohn are members of the CBA.

Osborn's statement regarding "commission disputes between members" refers to a CBA bylaw that provides members must "submit all controversies involving commissions, between or among them to binding arbitration by the Association, rather than to bring a suit to law."

In a November 25, 2009 letter to Osborn, Leibsohn enclosed a copy of the 2008 listing agreement and alleged that Colliers and Vander Veen "approached [K&S] while the enclosed listing agreement was still in force and proposed to the owners a sale of their interest in the property to be facilitated by a Deed in Lieu of Foreclosure . . . ." Leibsohn further alleged that Colliers and Vander Veen

> encouraged the brokers not to renew the existing listing agreement as of November 1, 2009 and/or to insist upon a provision in the renewed listing agreement which would carve out or exclude any duty on the part of the owners to pay [Leibsohn] a commission in the event of a Deed in Lieu of Foreclosure.

Leibsohn later sent the 2009 amended agreement to the CBA. Leibsohn did not further pursue the matter with the CBA at that time, and the deed in lieu transaction closed at the end of December 2009.

### Complaint in Superior Court and Motion to Stay Proceedings Pending Arbitration

Believing CBA's arbitration process gave him no recourse, Leibsohn filed a complaint against Colliers and Vander Veen in superior court in August 2010, alleging tortious interference with a contractual relationship and business expectancy. On August 31, 2010, Colliers and Vander Veen filed a motion to stay proceedings and compel arbitration. They argued, "Because [Leibsohn's] claim involves commissions, and both it and Colliers are members of CBA, in accordance with CBA's Bylaws and the mandates of the Uniform Arbitration Act, this Court should stay the action and direct the

parties to submit to binding arbitration." Leibsohn opposed the motion, arguing in part that the CBA previously determined the dispute was not arbitrable and that Leibsohn relied on that representation. Colliers and Vander Veen replied, clarifying that they sought a stay "pending arbitration only." They stated, "If [Leibsohn's] claim is not arbitrable, Defendants concede it is cognizable before this Court. . . . If [Leibsohn] demands arbitration in accordance with the CBA Arbitration Rules and CBA concludes that the matter is not arbitrable, Defendants will not object to a lift of the stay so that the matter can proceed in this Court." Colliers and Vander Veen clarified, "Because a closing has since occurred and [Leibsohn] now alleges a commission dispute, this claim is arbitrable."

The trial court granted the motion to stay and ordered the parties to submit to arbitration. The court noted in its order, "[G]iven the prior e-mail exchanges and representations by CBA, if CBA concludes that the matter is not arbitrable, the Ct. may consider imposing terms against Defendants."

For several months, the CBA rejected Leibsohn's attempts to proceed with arbitration, objecting on technical bases such as whether his complaint was adequately detailed and whether he paid the filing fee. In March 2011, Leibsohn sued SeaTac for intentional interference with a contractual relationship.[9] Meanwhile, Leibsohn moved to lift the stay in his suit against Colliers and Vander Veen, but the court denied his motion and granted defendants' motion for sanctions against Leibsohn, finding that Leibsohn

---

[9] SeaTac moved to consolidate with Leibsohn's suit against Colliers and Vander Veen, alleging the two cases shared identical plaintiffs, facts, and questions of law. The court later consolidated the two cases. See Clerk's Papers (CP) at 391 (caption showing consolidated cases).

willfully impeded the arbitration process. The court relied in part on the declaration of CBA's counsel, Jeffrey Coop, who stated, "If Leibsohn submits a complaint that complies with CBA's rules, along with the mandatory filing fee of $500.00, an arbitration will proceed."

Leibsohn sent the $500 filing fee to CBA and filed a detailed amended arbitration complaint on August 31, 2011. Colliers and Vander Veen then filed a motion to dismiss, arguing that Leibsohn's arbitration complaint was time barred under CBA's arbitration rules because it was not filed by March 31, 2010—three months after the sale closed and five months before Colliers and Vander Veen first moved to compel arbitration—or subsequently filed within three months of the court's orders compelling arbitration and denying Leibsohn's motion to stay.[10] All parties agreed that a prearbitration hearing on Colliers and Vander Veen's motion to dismiss was appropriate and that a panel of CBA members would be selected under CBA's arbitration rules. CBA chose five panelists and received no challenges to those panelists from either party. In March 2012, the panel granted the motion to dismiss in a "pre-arbitration hearing decision."

<u>Motion to Lift Stay, Reissue Case Schedule, and Award Sanctions</u>

On April 2, 2012, following the arbitration decision, Leibsohn again moved to lift the stay, reissue a case schedule, and sanction Colliers and Vander Veen, alleging they "made misrepresentations to this Court and omitted information in a successful effort to

---

[10] CBA's arbitration rules require complaints for arbitration to be filed with the CBA within three months of the sale closing or the due date of the commission.

persuade this Court to stay this matter and compel [Leibsohn's] claims to arbitration."[11]

Leibsohn alleged that Colliers and Vander Veen

> consistently represented to this Court that the matter was arbitrable and never raised the claim or alerted the Court that they believed Leibsohn's arbitration complaint—once compelled to arbitration by this Court—became time barred on March 31, 2010 by CBA arbitration rules because it was not filed within three months of the closing of the 'sale' to SeaTac.

Colliers and Vander Veen opposed the motion and requested that the court confirm the arbitration award. They argued that Leibsohn's claim, while arbitrable, was untimely. They also argued that Leibsohn's motion to stay "is in substance a motion to vacate the arbitration award and should be treated as such."[12] They claimed that Leibsohn showed no statutory grounds under RCW 7.04A.230 justifying vacating the arbitration award, and thus, under RCW 7.04A.230(4), the court should confirm the award and dismiss Leibsohn's case.

On April 24, 2012, the trial court granted Leibsohn's motion, lifted the stay, and issued a new case schedule. The court explained the basis for its ruling:

> [T]he CBA made multiple explicit representations to Leibsohn that his complaint was not arbitrable and, in reliance on such representations, Leibsohn did not pursue arbitration with the CBA within the three month window. Following Leibsohn's complaint filed with this court, the Defendants, on two separate occasions, explicitly represented to this court that the matter was arbitrable, and assured the court that if the matter was not arbitrable, then the Defendants would not object to a motion to lift the stay and re-issue a case schedule. The court finds that in this case and under these facts, the CBA's subsequent summary dismissal without reaching the merits by way of the "pre-arbitration hearing" did

---

[11] Leibsohn made his motion under CR 60(b)(4), which allows a court to set aside an order if the order resulted from the opposing party's misrepresentations or misconduct.

[12] In his reply, Leibsohn stated, "[Defendants] incorrectly contend[] that Leibsohn simply does not like the result from the CBA hearing and its motion is actually a motion to vacate an arbitration award."

not constitute an arbitration as expected by [Leibsohn] and argued by Defendants and, therefore, Defendants are estopped from objecting to [Leibsohn's] Motion to Lift the Stay and Re-issue Case Schedule.

For Colliers' and Vander Veen's "misrepresentations regarding arbitrability," the court imposed sanctions of $500 (the filing fee Leibsohn paid for the arbitration), plus Leibsohn's attorney fees and costs for all proceedings beginning with Colliers and Vander Veen's motion to compel arbitration (approximately $55,000). The court denied the defendants' subsequent motion for reconsideration.

Leibsohn filed a second amended complaint against Vander Veen, Colliers, and two Colliers employees on April 30, alleging causes of action for tortious interference with a business expectancy, Consumer Protection Act ("CPA") violations, and unjust enrichment. Leibsohn filed a first amended complaint against SeaTac on June 21, alleging tortious interference with a business expectancy.

Summary Judgment Proceedings and Motion to Confirm Arbitration Award

SeaTac moved for summary judgment in August 2012, arguing that the transaction documents identify a deed in lieu of foreclosure in which K&S's owners were released from personal guarantees and that Leibsohn's October 2, 2009 counterproposal excluded commission for such transactions. Colliers and Vander Veen also moved for summary judgment, arguing that Leibsohn's listing agreement with K&S had lapsed by the time of the deed in lieu transaction, and even if it had not, the amended listing agreement excludes deed in lieu transactions as commissionable events. Leibsohn argued in opposition that he was entitled to a commission under the

-15-

2008 agreement's tail provision.[13] He also argued that he had a business expectancy in the extension of the agreement, and that but for Vander Veen's contact, Switzer would have signed Leibsohn's proposed extension without modifying it.

Leibsohn also moved for partial summary judgment, requesting the court to "hold pursuant to CR 56 that the real property transaction central to this case is a sale, both under Washington's excise tax statute, RCW 82.45.010, and the Exclusive Sale Listing Agreement between Leibsohn and the property seller." Colliers and Vander Veen opposed the motion, arguing that (1) Leibsohn's listing agreement had lapsed and he had no contract on which to base a claim and (2) even assuming it had not lapsed, the listing agreement excluded a commission for this transaction. SeaTac also opposed the motion, arguing that the Vander Veen transaction was specifically excluded under the listing agreement—whether it was labeled a deed in lieu of foreclosure, a sale of K&S's stock, a short sale, or some other transaction.

On August 20, 2012, after moving for summary judgment, Colliers and Vander Veen also moved to confirm the arbitration award. They argued that under RCW 7.04A.230, a motion to vacate an arbitration award must be made within 90 days of the award and that Leibsohn failed to do so. Leibsohn responded that because the court relieved him from the order compelling arbitration under CR 60(b)(4), "the effect of the

---

[13] Leibsohn claimed, "At the latest, SeaTac offered to purchase the property by October 2, 2009, when Switzer sent Vander Veen a letter of intent agreeing to sell the property to Vander Veen's undisclosed principal. At that time, the Exclusive Sale Listing Agreement was still in effect. The sale closed on December 31, 2009, within six months of the expiration of the 2008 Exclusive Sale Listing Agreement. Leibsohn was thus entitled to a commission under the agreement's tail period provision if the extension was ineffective." (Footnote omitted.)

Court's Order Granting Motion to Lift Stay and Re-Issue Case Schedule is that there is no arbitration award to modify, vacate, or confirm."

The court heard oral argument on Colliers and Vander Veen's motion to confirm. The court noted that its April 24, 2012 order "was not as comprehensive as it should have been" and stated this was "an error the Court made, given that I wanted to have the matter brought here. There was no question that this Court had decided, after reading those pleadings, that this was a matter that the Court was going to hear." RP (Aug 31, 2012) at 8. The court indicated it would review the case materials before making a decision.

On September 20, 2012, the court denied Leibsohn's motion for partial summary judgment. The court based its decision "on the conclusion that the transaction was a deed in lieu of foreclosure." The court "[took] no position on whether the transaction could be interpreted by the Department of Revenue as a 'sale' for purposes of collecting excise taxes under RCW 84.45.010." The court granted SeaTac's and Colliers and Vander Veen's summary judgment motions without elaboration and dismissed Leibsohn's claims with prejudice.

The same day, the court issued an order denying Colliers and Vander Veen's motion to confirm the arbitration award and amending its April 24, 2012 order that lifted the stay and reissued the case schedule. The court explained its reasoning:

> After hearing oral argument on the Motion to Confirm the Arbitration Award, the court subsequently re-read the original motion and responsive pleadings on the question of whether the court should lift the stay and permit Plaintiff to proceed in accordance with a regularly issued civil case schedule (motion originally filed in April 2012) in this forum. While Plaintiff did not specifically request that the arbitration award be vacated, the underlying reason for the request was the summary dismissal and the perceived lack of fairness

-17-

before the CBA. In response to Plaintiff's Motion, Defendants asked the court to treat the motion as a motion to vacate the arbitration award and stated, "Plaintiff's 'motion to lift stay' is in substance a motion to vacate the arbitration award and should be treated as such." See Defendants' Response to Plaintiff's Motion to Lift Stay and Defendants' Motion to Confirm Award at p.5. Without question, the issue of whether to confirm or vacate the arbitration order was before the court.

As the parties know, the court granted the motion to lift the stay and issued a case schedule. The court made a specific finding at the time that the pre-arbitration hearing did not constitute an arbitration hearing on the merits as expected. In hindsight, despite this finding the court should have included provisions in the order which expressly denied Defendants' request to confirm the order entered by the CBA dismissing Plaintiff's matter and which vacated the award, or in this case the CBA decision to not hear the case. The issuance of a case schedule for trial in this court would have been totally inconsistent with leaving an arbitration order in place.

The court has the authority to correct and/or clarify its orders so that they reflect the court's intent and decision. The court declines Plaintiff's request to vacate its Order Compelling Arbitration as the way to resolve the issue. Rather, the court hereby amends the order of April 24, 2012 as follows:

> IT IS FURTHER ORDERED that due to the unusual circumstances surrounding the procedures, the pre-hearing arbitration decision is vacated in accordance with RCW 7.04A.230(1)(a) and CR 60(b)(11).

SeaTac moved for attorney fees totaling $110,405.05, arguing it qualified as a third party beneficiary under the listing agreement's attorney fees provision. Colliers and Vander Veen also moved for attorney fees, arguing that the listing agreement's attorney fees provision became enforceable with regard to third parties alleged to have tortiously interfered with that agreement. The trial court denied the defendants' motion for attorney fees, finding no contractual or statutory basis to award fees "since the Defendants were not parties to the listing agreement nor was the City a third party beneficiary such that fees should be awarded."

Leibsohn appeals the trial court's denial of his partial summary judgment motion and grant of the defendants' summary judgment motions. Colliers and Vander Veen cross appeal the trial court's (1) order granting motion to lift stay and reissue case

-18-

69445-6-I/19

schedule, entered April 24, 2012; (2) order setting attorney fees and costs, entered June 5, 2012; (3) order denying motion to confirm arbitration award and amending prior order, entered September 20, 2012; and (4) order denying motion for attorney fees, entered October 16, 2012. SeaTac cross appeals the trial court's denial of its motion for attorney fees.

## ANALYSIS

### Standard of Review

We review summary judgment de novo and consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 501, 115 P.3d 262 (2005). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Bulman v. Safeway, Inc., 144 Wn.2d 335, 351, 27 P.3d 1172 (2001). The nonmoving party cannot rely solely on the allegations in his or her pleadings, on speculation, or on argumentative assertions that unresolved factual issues remain. White v. State, 131 Wn.2d 1, 9, 929 P.2d 396 (1997). Such assertions must be supported by evidence. Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986).

### Colliers and Vander Veen's Cross Appeal

Colliers and Vander Veen contend the trial court erred in denying their August 12, 2012 motion to confirm the arbitration award. They contend the trial court improperly "sua sponte vacat[ed] the arbitration award" when it amended its April 24, 2012 order granting Leibsohn's motion to lift the stay and reissue a case schedule. Colliers/Vander Veen Response Br. at 17. Related to this argument, Colliers and

-19-

Vander Veen appeal the trial court's April 24, 2012 order granting Leibsohn's motion to lift the stay and reissue a case schedule and awarding sanctions and fees in connection with that order. Specifically, they contend the court erred in failing to confirm the award and concluding they were estopped from objecting to Leibsohn's motion to lift the stay.

### Amendment of Prior Decision to Include Vacation of Arbitration Award

Colliers and Vander Veen contend the trial court erred in amending its April 2012 order. They argue the trial court was required to confirm the arbitration award under RCW 7.04A.220 because Leibsohn failed to move to vacate the award within RCW 7.04A.230(2)'s 90-day deadline.[14] We need not address this issue because, even assuming the court properly treated Leibsohn's motion to lift the stay and reissue a case schedule as a motion to vacate[15] and properly amended its prior order to reflect

---

[14] RCW 7.04A.220 provides that after a party to an arbitration proceeding receives notice of an award, the party may file a motion with the court for an order confirming the award, "at which time the court shall issue such an order unless the award is modified or corrected under RCW 7.04A.200 or 7.04A.240 or is vacated under RCW 7.04A.230." RCW 7.04A.230(2) provides that a motion to vacate an arbitration award must be made within 90 days after the movant receives notice of the award. Upon motion of a party to the arbitration proceeding, the court "shall" vacate an award if, among other reasons, the award "was procured by corruption, fraud, or other undue means" or there was corruption or misconduct by an arbitrator. RCW 7.04A.230(1)(a), (b).

RCW 7.04A.230's 90-day deadline for contesting an arbitration award is considered a statute of limitations. MBNA Am. Bank, N.A. v. Miles, 140 Wn. App. 511, 514, 164 P.3d 514 (2007). "'Its purpose 'is to expedite finality of the arbitration process . . . consistent with the overall objective of speedy resolution of disputes.'" MBNA, 140 Wn. App. at 514 (quoting Dougherty v. Nationwide Ins. Co., 58 Wn. App. 843, 849, 795 P.2d 166 (1990)).

[15] As discussed above, Colliers and Vander Veen argued below that Leibsohn's motion to lift the stay and reissue case schedule was "in substance a motion to vacate the arbitration award and should be treated as such." (Emphasis added.) They explained that Leibsohn showed no statutory grounds under RCW 7.04A.230 justifying vacating the arbitration award, and thus, under RCW 7.04A.230(4), the court should

vacation of the arbitration decision, the court lacked grounds to vacate the decision as discussed below.

### Grounds for Vacating the Award

The court based its decision to vacate the award on RCW 7.04A.230(1)(a), which provides that an arbitration award shall be vacated if "procured by corruption, fraud, or other undue means."

"Washington public policy strongly favors finality of arbitration awards." S&S Constr., Inc. v. ADC Props. LLC, 151 Wn. App. 247, 254, 211 P.3d 415 (2009). An arbitration award is a final judgment on the merits. RCW 7.04A.250(1) provides that after confirming an arbitration award, "the court shall enter a judgment in conformity with the order." That "judgment may be recorded, docketed, and enforced as any other judgment in a civil action." See also Scheer–Erickson v. Haines, noted at 120 Wn. App. 1042, 2004 WL 440213 at *2 ("An arbitration award is a final judgment on the merits."). "The superior court's authority in arbitration proceedings generally . . . is limited. It can only confirm, vacate, modify, or correct the arbitration award." Munsey v. Walla Walla College, 80 Wn. App. 92, 95-96, 906 P.2d 988 (1995) (citing RCW 7.04.150-.170). An appellate court's review of an arbitration award is limited to the court that confirmed,

---

confirm the award and dismiss Leibsohn's case. They reiterated in conclusion, "As discussed above, [Leibsohn's] motion is in substance a motion to vacate an arbitration award under RCW 7.04A.230." While Leibsohn did not specifically request that the arbitration award be vacated in his motion to lift the stay and reissue a case schedule, the underlying reason for his motion was the summary dismissal and the perceived lack of fairness before the CBA. In response to Leibsohn's motion, Colliers and Vander Veen asked the court to treat the motion as a motion to vacate the arbitration decision, argued no basis existed for vacating the decision under RCW 7.04A.230, and asked the court to confirm the arbitration decision. The issue of whether to confirm or vacate the arbitration order was before the court.

vacated, modified, or corrected that award. Pegasus Constr. Corp. v. Turner Constr. Co., 84 Wn. App. 744, 747, 929 P.2d 1200 (1997).

We review de novo a trial court's decision to confirm or vacate an arbitration award. Fid. Fed. Bank, FSB v. Durga Ma Corp., 386 F.3d 1306, 1311 (9th Cir. 2004). Washington courts give substantial finality to a decision by an arbitration panel rendered in accordance with the parties' contract and chapter 7.04A RCW. Davidson v. Hensen, 135 Wn.2d 112, 118, 954 P.2d 1327 (1998). Our review is controlled by statute which permits vacation of an arbitration award only upon specific grounds, enumerated in RCW 7.04A.230. Such review is extremely limited and does not encompass a review of the merits of the case.[16] Boyd v. Davis, 127 Wn.2d 256, 267-68, 897 P.2d 1239 (1995). A trial court reviewing an arbitration award is not permitted to conduct a trial de novo. Boyd, 127 Wn.2d at 262-63. Absent an error of law on the face of the award, the trial court will not modify or vacate it. Boyd, 127 Wn.2d at 263. As our Supreme Court has reasoned, "The very purpose of arbitration is to avoid the courts . . . ." Thorgaard

---

[16] Under the uniform arbitration act, chapter 7.04A RCW, courts have the power to determine whether a controversy is subject to an agreement to arbitrate. RCW 7.04A.060(2); Saleemi v. Doctor's Assocs., Inc., 176 Wn.2d 368, 376, 292 P.3d 108 (2013). The arbitrability of a dispute is determined by examining the arbitration agreement between the parties. Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Group, Inc., 148 Wn. App. 400, 403, 200 P.3d 254 (2009) (the court resolves "the threshold legal question of arbitrability").

If the reviewing court "can fairly say that the parties' arbitration agreement covers the dispute, the inquiry ends because Washington strongly favors arbitration." Davis v. Gen. Dynamics Land Sys., 152 Wn. App. 715, 718, 217 P.3d 1191 (2009); Mendez v. Palm Harbor Homes, Inc., 111 Wn. App. 446, 454, 45 P.3d 594 (2002). Any doubts regarding the applicability of an arbitration agreement "should be resolved in favor of coverage." Heights, 148 Wn. App. at 405. It is well established that "[i]f the dispute can fairly be said to involve an interpretation of the agreement, the inquiry is at an end and the proper interpretation is for the arbitrator." Meat Cutters Local 494 v. Rosauer's Super Markets, Inc., 29 Wn. App. 150, 154, 627 P.2d 1330 (1981).

Plumbing & Heating Co. v. King County, 71 Wn.2d 126, 131, 426 P.2d 828 (1967). It is designed to settle controversies, not to serve as a prelude to litigation. Thorgaard Plumbing, 71 Wn.2d at 131.

Our search shows no Washington court has ever vacated an arbitration award based on undue means under RCW 7.04A.230(1)(a). Vacation of an arbitration award on these grounds is rare. Federal authority based on an analogous provision of the uniform arbitration act provides persuasive guidance on the standard for finding undue means. See Seattle Packaging Corp. v. Barnard, 94 Wn. App. 481, 486, 972 P.2d 577 (1999) (relying on federal authority to construe fraud under RCW 7.04A.230(1)(a)). "Undue means" connotes "behavior that is immoral if not illegal." A.G. Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401, 1403-404 (9th Cir. 1992).

"The test for determining whether an arbitration award has been procured by fraud has been compared to the test for setting aside a judgment under CR 60(b) by reason of fraud." Seattle Packaging, 94 Wn. App. at 493. As we explained in Seattle Packaging,

> Peoples State Bank v. Hickey, 55 Wash. App. 367, 777 P.2d 1056 (1989), is instructive in this regard. There, a decree of foreclosure was entered by default after proper service upon and failure to appear by one Hickey, who claimed an interest in the property. In obtaining the default judgment, the bank misrepresented to the court that Hickey's lien was inferior and subordinate to that of the bank. In fact, this was not so—Hickey's lien was superior to that of the bank. But Hickey slept on her rights and failed to move to set aside the default judgment within one year. After that deadline had passed, she moved to vacate the judgment under CR 60(b), citing the misrepresentation by the bank, without which her property rights would not have been foreclosed. This court denied relief despite Hickey's strong showing of material misrepresentation, stating:
>> The rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect. For this reason, the conduct must be such that the losing party was prevented from fully and fairly presenting its case or defense. Applying the above authorities to the facts at bar, we find

-23-

vacation of the default judgment is not warranted. Although [the bank] misrepresented the status of Hickey's lien, there is no connection between the bank's misrepresentation and Hickey's failure to respond to the complaint or employ an attorney. There is no evidence that Hickey relied on the misrepresentation or was misled by [the bank's] statements in the complaint . . . . The misrepresentation having nothing to do with her failure to respond to the summons and complaint, Hickey cannot meet the requirement that the misrepresentation must have operated to prevent her from fully and fairly presenting her case.

Seattle Packaging, 94 Wn. App. at 493 (alteration in original) (quoting Peoples State Bank v. Hickey, 55 Wn. App. 367, 372, 777 P.2d 1056 (1989)).

In granting Leibsohn's subsequent motion to lift the stay and reissue a case schedule (and thus effectively vacating the arbitration decision), the trial court found that the "CBA made multiple explicit representations to Leibsohn that his complaint was not arbitrable and, in reliance on such representations, Leibsohn did not pursue arbitration with the CBA within the three month window." The court further found that Colliers and Vander Veen, "on two separate occasions, explicitly represented to this court that the matter was arbitrable, and assured the court that if the matter was not arbitrable, then the Defendants would not object to a motion to lift the stay and re-issue a case schedule." Finally, the court found that under the facts involved, the "CBA's subsequent summary dismissal without reaching the merits by way of the 'pre-arbitration hearing' did not constitute an arbitration as expected by [Leibsohn] and argued by Defendants"— and, thus, Colliers and Vander Veen were estopped from objecting to Leibsohn's motion to lift stay and reissue case schedule. As discussed below, none of these grounds constitute "undue means" justifying vacation of the arbitration decision.

## CBA's Representations

The trial court based its decision in part on CBA's e-mail messages to Leibsohn regarding his initial complaint. Leibsohn's October 13, 2009 complaint alleged that Vander Veen directly solicited the lenders and circumvented Leibsohn's exclusive listing agreement. The complaint alleged Vander Veen "violated the CBA Rules and Regulations regarding Solicitation of Listings and potentially the Rules and Regulations regarding Offers and Sales." Leibsohn made no claim for a commission, as no commission was yet due. Instead, he asked the CBA to intervene and issue "some type of cease and desist notice to Colliers and [Vander Veen]." CBA informed Leibsohn that his complaint was not arbitrable.

Regarding CBA's initial statements about arbitrability, we first note that Colliers and Vander Veen are not legally responsible for CBA's statements. Leibsohn cites no authority to the contrary. All parties had copies of the arbitration rules, and under CBA Rule VII, Leibsohn was bound by those rules regardless of whether CBA's representatives gave him correct information.

> Every CBA member is responsible for knowing and complying with the Rules and Bylaws of CBA . . . . CBA employees and agents may respond to oral inquiries of members in this regard, but the ultimate responsibility remains with the member. CBA shall not be responsible, under any circumstances, for oral or written opinions, even if negligently given, by its employees and agents.

Leibsohn fails to show he reasonably relied on CBA's initial e-mail messages regarding his claim.

We also agree with Colliers and Vander Veen that CBA's e-mail messages were not misleading. When Leibsohn first complained to CBA, no transaction had closed— sale or otherwise—and Leibsohn made no claim for a commission owed. He merely

contended that Colliers and Vander Veen were interfering with his listing agreement and conspiring to cheat him out of his right to eventually earn a commission. At that point, CBA made no misrepresentation in telling Leibsohn his complaint was not arbitrable. Leibsohn's complaint became arbitrable only after the transaction closed and he had a claim for a commission.

### Colliers and Vander Veen's Representations to the Court

The trial court also based its decision on its finding that Colliers and Vander Veen made misrepresentations to the court regarding arbitrability. As discussed above, the Vander Veen transaction closed on December 31, 2009. It is undisputed that CBA's arbitration rules require arbitration complaints to be filed within three months of a sale closing or a commission coming due—which in this case was March 31, 2010—and that Leibsohn did not file an arbitration complaint in that three-month period. Leibsohn filed his complaint in superior court in August 2010, alleging that tortious interference cost him his commission.

Osborn represented Colliers and Vander Veen in superior court and moved to compel arbitration. They argued in reply to Leibsohn's opposition: "Now that closing has occurred and a commission has been paid, this case is an arbitrable 'controvers[y] involving a commission,' for which CBA Bylaws require that the dispute be resolved in arbitration." (Alteration in original.)

At arbitration, Colliers and Vander Veen moved to dismiss, claiming that while Leibsohn's claim involved a commission and, thus, was "subject to arbitration," it was "barred as untimely" under CBA's three-month statute of limitations for arbitration complaints. On the parties' agreement, the CBA appointed a prearbitration panel to

decide this motion. Leibsohn submitted a brief to the panel opposing Colliers and Vander Veen's motion to dismiss, and in that brief, he made the same arguments he later made to the trial court regarding why he failed to timely file an arbitration complaint. Specifically, he argued that CBA told him he had no arbitrable claim and he relied on that statement in taking no further action with CBA; that Colliers and Vander Veen "concocted the entire scheme between SeaTac and K&S to avoid there ever being a sale;" that CBA changed its position regarding arbitrability; and that Colliers and Vander Veen were estopped from asserting the statute of limitations defense. The panel dismissed Leibsohn's complaint in a "pre-arbitration hearing decision."

Under these circumstances, the trial court lacked authority to vacate the arbitration decision premised on Colliers and Vander Veen's arbitrability representations to the court. The defendants correctly contend that (1) they made no misrepresentation in telling the court Leibsohn's claim was arbitrable and (2) even if they did, such statements were not material because the court was required to compel arbitration regardless of any statute of limitations issue. While Colliers and Vander Veen never told the court Leibsohn's claim was time barred or that they intended to move for dismissal, Leibsohn cites no authority requiring them to do so. Colliers and Vander Veen represented that Leibsohn's claim was substantively arbitrable under CBA's bylaws. The bylaws support this conclusion.[17] At that point, regardless of any statute of

---

[17] By the time Leibsohn filed his suit in superior court, the Vander Veen transaction had closed and Leibsohn alleged tortious interference cost him his commission. CBA's bylaws clearly require members to arbitrate "all controversies involving commissions, between or among them" and prohibit members from taking legal action involving such controversies without prior approval of the board of directors.

limitations issues that might arise during arbitration, the court was required to compel arbitration and let the arbitrator resolve the timing issues. Yakima County v. Yakima County Law Enforcement Officers Guild, 157 Wn. App. 304, 321, 237 P.3d 316 (2010). Even if the defendants' statements regarding arbitrability were misleading, they correctly argue, "Under RCW 7.04A.70 and the CBA's Bylaws, the Court had to compel arbitration regardless of whether the case would be dismissed based on the statute of limitations." Colliers/Vander Veen's Reply Br. at 10.

The arbitration panel was entitled to decide the time bar issue independent of how the trial court arrived at its decision to compel arbitration. Leibsohn had the opportunity to argue against the time bar when he objected to Colliers and Vander Veen's motion to dismiss on that ground. His objection was properly made and considered by the panel at a hearing to which he did not object. Under these facts, regardless of what CBA told him or what Colliers and Vander Veen told the trial court, Leibsohn fails to establish extreme and unusual circumstances necessary to vacate an arbitration decision under RCW 7.04A.230(1). Because the record does not support a conclusion that the panel arrived at its conclusion by fraud or other undue means[18] or

---

[18] Leibsohn fails to show that the arbitration panel that dismissed his case was biased or unfair. He explicitly agreed to the prearbitration hearing and elected not to challenge any of the panel members. As discussed above, Washington has a strong policy favoring arbitration and providing only very narrow grounds to vacate arbitration decisions. Leibsohn's brief to the panel contained the same arguments he later made to the trial court regarding why he failed to timely file an arbitration complaint. The pre-arbitration panel considered these arguments and rejected them when it dismissed Leibsohn's case. Leibsohn only speculates that the panel was biased and unfair or that the panel arrived at its decision by fraud or undue means. Leibsohn's arguments are all based on Colliers and Vander Veen's conduct leading up to the decision, but he fails to explain why such conduct is relevant given our strong policy in favor of upholding

that any other basis exists for vacation, the trial court improperly vacated the decision. We reverse and remand with instructions to confirm the arbitration decision in favor of Colliers and Vander Veen.[19]

### April 24, 2012 Motion to Lift Stay and Reissue Case Schedule

Given our discussion above, the trial court erred in granting Leibsohn's motion to lift the stay and reissue a case schedule. The court found the defendants were estopped from objecting due to their previous representation that Leibsohn's claim was arbitrable and they would not object to litigating the matter in superior court if the CBA determined otherwise. The primary factors of judicial estoppel are whether (1) the nonmoving party's "later position is clearly inconsistent with the [party's] earlier position;" (2) "judicial acceptance of the second position would create a perception that either the first or second court was misled by the party's position;" and (3) "the party asserting the inconsistent position would obtain an unfair advantage or imposes an unfair detriment on the opposing party if not estopped." Ashmore v. Estate of Duff, 165 Wn.2d 948, 951-52, 205 P.3d 111 (2009). These factors are not exhaustive, "but help guide a court's decision." Ashmore, 165 Wn.2d at 952. We review a trial court's decision whether to apply judicial estoppel for abuse of discretion. Arkison v. Ethan Allen, Inc., 160 Wn.2d at 535, 538, 160 P.3d 13 (2007). A trial court abuses its

---

arbitration decisions. And as discussed above, Leibsohn's allegations of misconduct are unpersuasive.

[19] Given our disposition, we need not address Leibsohn's tortious interference, CPA, and unjust enrichment claims against Colliers and Vander Veen. And because the trial court should not have reached Colliers and Vander Veen's August 2012 motions for summary judgment and to confirm the arbitration decision, we need not address whether the court erroneously decided those orders.

-29-

discretion when it bases its decision on untenable or unreasonable grounds. Arkison, 160 Wn.2d at 538.

For the reasons discussed above, the trial court improperly applied estoppel to bar the defendants from objecting to Leibsohn's motion to lift the stay.

Sanctions

For the same reasons, the trial court improperly imposed sanctions and fees "for [the defendants'] misrepresentations regarding arbitrability."[20] Washington cases mention four recognized equitable grounds for awards of attorney fees: bad faith conduct of the losing party, preservation of a common fund, protection of constitutional principles, and private attorney general actions. Dempere v. Nelson, 76 Wn. App. 403, 407, 886 P.2d 219 (1994). Three types of bad faith conduct warrant attorney's fees: (1) prelitigation misconduct, (2) procedural bad faith, and (3) substantive bad faith. Rogerson Hiller Corp. v. Port of Port Angeles, 96 Wn. App. 918, 927, 982 P.2d 131 (1999).

Although the trial court did not explain the basis for awarding fees here, we presume it acted under the procedural bad faith prong. Procedural bad faith is unrelated to the merits of the case and refers to vexatious conduct during the course of litigation, such as delaying or disrupting proceedings. Rogerson, 96 Wn. App. at 928. Examples of procedural bad faith include dilatory tactics during discovery, failure to meet filing deadlines, misuse of the discovery process, and misquoting or omitting

---

[20] We review the reasonableness of an award of attorney fees for an abuse of discretion. Rettkowski v. Dep't of Ecology, 128 Wn.2d 508, 519, 910 P.2d 462 (1996). The trial court abuses its discretion only when it exercises its discretion on manifestly unreasonable grounds. Rettkowski, 128 Wn.2d at 519.

material portions of documentary evidence. Rogerson, 96 Wn. App. at 928. "The purpose of this type of award is 'to protect the efficient and orderly administration of the legal process.'" Rogerson, 96 Wn. App. at 928 (quoting Jane P. Mallor, Punitive Attorneys' Fees for Abuses of the Judicial System, 61 N.C. L. Rev. 613, 644 (1983)).

The trial court improperly awarded fees and sanctions against Colliers and Vander Veen. Colliers and Vander Veen never represented that Leibsohn's claim would be heard on the merits at arbitration. Rather, they represented that Leibsohn's claim was "arbitrable" (which it was under CBA bylaws) and requested that the court compel arbitration (which the court was required to do). Colliers and Vander Veen never told the court they would agree to litigate the merits in superior court if the arbitration panel determined Leibsohn's claim was time barred. Leibsohn's subjective expectations regarding the arbitration process notwithstanding, no basis existed for the sanctions and attorney fees the court imposed here. We reverse the sanction and fee award.

### Trial Attorney Fees

Colliers and Vander Veen also appeal the trial court's denial of their request for attorney fees. Below, they based their argument on RCW 4.84.330 and the attorney fees provision in the contract between Leibsohn and K&S.

"Under the American rule compensation for attorney fees and costs may be awarded only if authorized by contract, statute, or a recognized ground in equity." In re Impoundment of Chevrolet Truck v. Wash. State Patrol, 148 Wn.2d 145, 160, 60 P.3d 53 (2002). Whether an award of fees is authorized is a question of law reviewed de novo. Boguch v. Landover Corp., 153 Wn. App. 595, 615, 224 P.3d 795 (2009).

With regard to whether a contract provision authorizes attorney fees and costs, RCW 4.84.330 provides in part:

> In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

Leibsohn's listing agreement with K&S provides:

> ATTORNEY'S FEES. In the event either party employs an attorney to enforce any terms of this Agreement and is successful, the other party agrees to pay a reasonable attorney's fee. In the event of trial, the amount of the attorney's fee shall be as fixed by the Court.

Nothing in the above contractual provision evidences intent by the parties to the contract to confer on any third party the right to fees. However, Colliers and Vander Veen contend that under Deep Water Brewing, LLC v. Fairway Res., Ltd., 152 Wn. App. 229, 215 P.3d 990 (2009), they can enforce the contractual fee provision because the contract was central to the existence of Leibsohn's claims.

Deep Water discusses the award of fees where the recovering party was not a party to a contract. Deep Water is not controlling. There, Division Three of this court concluded that the trial court properly awarded attorney fees to the Kenagys. Deep Water, 152 Wn. App. at 279. The Kenagys bought a restaurant with a lake view from the Ahlquists. Deep Water, 152 Wn. App. at 241. The Ahlquists had entered into an easement agreement and a right-of-way agreement with developers to preserve the restaurant's view. Deep Water, 152 Wn. App. at 239-40. These latter agreements contained attorney fees provisions. Deep Water, 152 Wn. App. at 245-46. Division Three of this court explained that the Kenagys were not third party beneficiaries to the

agreements "but nonetheless [could] enforce the agreements (with attorney fees provisions) as running covenants protecting the view from their restaurant." Deep Water, 152 Wn. App. at 278.

That is not the case here. There are no running covenants involved in this case. Rather, Colliers and Vander Veen rely on a provision in an agreement to which they are not parties. No authority exists under these circumstances to allow them the benefit of a contractual provision for attorney fees where they are neither parties to the contract nor intended third party beneficiaries of that contract. In the five cases that Deep Water cited in support of its attorney fee award, the party requesting fees was a party to the agreement or had a right to enforce the agreement as a successor or third party beneficiary. See Deep Water, 152 Wn. App. at 278-79.

Colliers and Vander Veen avoid this threshold issue and analyze instead whether the contract was central to Leibsohn's claims. Entitlement to fees depends on whether the attorney fees provision in the agreement between Leibsohn and K&S extends to Colliers and Vander Veen. Deep Water, 152 Wn. App. at 278. The attorney fee provision in the listing agreement is narrow. It provides that in the event "either party employs an attorney to enforce any terms of this Agreement and is successful, the other party agrees to pay a reasonable attorney's fee." (Emphasis added.) The language limits the causes of action justifying a fee award to those claims specifically seeking to enforce a provision of the agreement against the other party. See Burns v. McClinton, 135 Wn. App. 285, 309, 143 P.3d 630 (2006) (rejecting attorney fee award where provision allowed fees in an action to "enforce" agreement, and the claims in question were not brought to enforce the agreement and the agreement was not central to the

-33-

dispute). In contrast, the fee provision in Deep Water provided, "'In the event of any controversy, claim, or dispute relating to this Agreement or the prior Agreement, or their breach, the prevailing party shall be entitled to recover . . . attorneys fees.'" Deep Water, 152 Wn. App. at 277 (emphasis added). Leibsohn sued to enforce common law duties he believed the defendants owed him, not contractual duties. The fee provision does not extend to Colliers and Vander Veen.[21]

---

[21] Colliers and Vander Veen also contend that because Leibsohn claimed the right to attorney fees under the contract in the event he prevailed, Colliers and Vander Veen are equally entitled to their fees under the equitable principle of mutuality of remedy. It is true that under RCW 4.84.330, the agreement must work both ways. That is, if the instrument provides attorney fees to only one of the parties to the instrument, the instrument will be deemed, by law, to provide attorney fees to whichever party prevails in the event of suit. RCW 4.84.330 is not directly applicable to an action on an agreement that contains a bilateral attorney fee provision as this one does. Kaintz v. PLG, Inc., 147 Wn. App. 782, 786-87, 197 P.3d 710 (2008). "Nevertheless, mutuality of remedy, the principle underlying RCW 4.84.330, is a well recognized ground of equity that can support an award of attorney fees" in certain circumstances. Almanza v. Bowen, 155 Wn. App. 16, 24, 230 P.3d 177 (2010). The mutuality of remedies doctrine authorizes contractual attorney fee awards even after the contract itself is ruled invalid or unenforceable. Kaintz, 147 Wn. App. at 789. "Pursuant to this principle, where a party has successfully argued that a statute is invalid (thus rendering the statute's attorney fee provision without force), that party is nevertheless entitled to an award of attorney fees if such fees would have been awarded to the opposing party had the statute been deemed valid." Fairway Estates Ass'n v. Unknown Heirs, Devisees of Young, 172 Wn. App. 168, 182, 289 P.3d 675 (2012). In applying this rule, courts determine whether to make an award of attorney fees by looking to the terms of the contract. Kaintz, 147 Wn. App. at 790.

Mutuality of remedy does not apply here. Although Leibsohn claimed below that he was entitled to attorney fees if he prevailed, his own argument on appeal belies that contention. As discussed above, the attorney fee provision at issue here is narrow—it provides for attorney fees if either party (K&S or Leibsohn) sues to enforce a contract provision and prevails. The listing agreement's attorney fees provision does not entitle Leibsohn to fees against third parties any more than it entitles Colliers and Vander Veen to fees against Leibsohn. Since Leibsohn could not have obtained an award of this type of attorney fees if he had prevailed against Colliers and Vander Veen, Colliers and Vander Veen likewise have no right to an award of fees as the prevailing parties.

Leibsohn's Appeal[22]

### Motion for Partial Summary Judgment Regarding Sale Versus Deed in Lieu—SeaTac

Leibsohn contends the Vander Veen transaction "was a commissionable sale, not a deed in lieu of foreclosure . . . ." Appellant's Br. at 20. SeaTac responds that the transaction was a deed in lieu transaction within the meaning of the commission exclusion K&S inserted in Leibsohn's listing agreement. Because Leibsohn moved for partial summary judgment on the sale versus deed in lieu issue, we consider the facts and all reasonable inferences in the light most favorable to SeaTac as the nonmoving party. Hearst Commc'ns, Inc., 154 Wn.2d at 501.

As a preliminary matter, the "potential transaction's" characterization as a deed in lieu, a short sale, a stock sale, or any other type of transaction is irrelevant given the exclusion's unambiguous language. Nothing in the exclusion depends on whether the "potential transaction" is subject to excise tax. The handwritten exclusion simply describes a "potential transaction" that was "specifically excluded" from the listing agreement:

> No commission will be due in the event that the owners sign a deed in lieu of foreclosure. The potential transaction in which a third party may ask the owners to give up the property in exchange for removal of personal guarantees is specifically excluded as part of this sales/fee agreement.

Switzer specifically identified the subject of the exclusion in his October 2, 2009 e-mail to Leibsohn that accompanied the October 2 counterproposal: "I wrote in a fee exclusion for the proposed deed in lieu of transaction proposed through Tom Hazelrigg

---

[22] Given our disposition, we address Leibsohn's remaining arguments only as they pertain to SeaTac.

and Arvin Vander Veen." According to Leibsohn, Switzer previously disclosed the pending transaction during meetings among K&S, Leibsohn, and the lenders on September 28, 2009. Leibsohn offered no counterproposal or comment on the handwritten exclusion at any time before he backdated and then signed it. According to Leibsohn's deposition testimony, he accepted the exclusion as written and explained by Switzer. As discussed above, Leibsohn knew about the proposed Vander Veen transaction and believed it was the only transaction pending at the time he signed the amended listing agreement. Leibsohn points to no other potential transaction to which the agreement's exclusion could have been referring. The exclusion clearly provides that no commission will be due to Leibsohn on the pending transaction proposed through Vander Veen.

The transaction that closed on December 31, 2009, is the same potential transaction disclosed on September 28, described in Switzer's October 2 e-mail, identified in the exclusion K&S inserted in the 2009 listing agreement and accepted by Leibsohn when he signed the new listing agreement. Regardless of the transaction's characterization, the listing agreement specifically excluded the transaction here.

Leibsohn contends the 2009 amendment to his listing agreement "was only for transactions that were legitimate deed in lieu transactions, not for a real estate sale." But as discussed above, the exclusion clearly includes the "potential transaction" as part of its explanation of deed in lieu. Switzer testified in his declaration that he "intended the first and second sentences of [the deed in lieu exclusion] to refer to the same deed in lieu of foreclosure transaction." The handwritten exclusion creates a general exclusion for deeds in lieu of foreclosure. The language denies Leibsohn a commission

if "the owners sign a deed in lieu of foreclosure." The exclusion is not contingent on whether DOR takes the position that excise tax is due. The only inquiry is whether the K&S owners signed a deed in lieu of foreclosure. The deed K&S signed specifically states that it is given in consideration of the agreement not to foreclose on the property. The parties' "Deed In Lieu Of Foreclosure Agreement" clearly outlines the process by which K&S provided the deed in exchange for dismissal of the foreclosure proceedings and release from liability arising under the loan documents or personal guarantees.

Leibsohn contends that the defendants' "self serving intent" cannot be used to import a definition of "deed in lieu of foreclosure" that is wholly contrary to the term's plain meaning. He argues:

> [T]he Exclusive Sale Listing Agreement simply incorporates the ordinary meaning of a "deed in lieu of foreclosure" – that is, a deed conveyed to the holder of a primary obligation (the loan) as a remedy for default. This transaction, where SeaTac had the sole goal of acquiring the property and never held more than a nominal interest in K & S's debt, cannot meet that definition.

Appellant's Reply Br. at 4 (citation omitted).[23] Leibsohn cites no authority for this argument. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (declining to consider arguments unsupported by reference to the record or citation to authority). The transaction itself shows that SeaTac purchased the debt (and thus stepped into the shoes of the lender), and K&S provided the deed to the property in exchange for release from that debt. Leibsohn admits that SeaTac paid

---

[23] SeaTac's manager of economic development, Jeffrey Robinson, was asked in his deposition whether "[t]he goal at all times when we're discussing any part of this transaction was to purchase the property." He answered, "Through the deed in lieu, yes." Regarding exhibit 21's mention of commission and excise tax, Robinson testified in his deposition that "the purpose of this was for us to get a good handle on what the excise tax may be if at some point in the future it needed to be paid by someone, so that we had a number to go to our Council with so we could explain that number to them."

K&S's lenders, not K&S directly. Appellant's Br. at 26. Leibsohn fails to explain why this transaction falls outside of the listing agreement's exclusion, which clearly equates the "potential [Vander Veen] transaction" with "deed in lieu."

Leibsohn argued below that analysis of the term "deed in lieu of foreclosure" should take into account DOR's excise tax opinions. But a deed in lieu of foreclosure is a generic instrument. Black's Law Dictionary defines it as "[a] deed by which a borrower conveys fee-simple title to a lender in satisfaction of a mortgage debt and as a substitute for foreclosure." BLACK'S LAW DICTIONARY 476 (9th ed. 2009). Washington law recognizes the existence of deed in lieu transactions in which excise tax is paid and deed in lieu transactions in which no excise tax is paid. See WAC 458-61A-208(3) (examples specifically identifying transactions that incur excise tax liability but are deed in lieu transactions nonetheless); see also CP 1641 (DOR employee Melchoir Kirpes's deposition testimony confirming that DOR "recognizes that there are deeds in lieu of forfeiture on which there's excise tax due, and there are deeds in lieu of forfeiture on which there is no excise tax due"). Thus, DOR recognizes that the existence of excise tax liability does not change the fundamental identity of a deed in lieu transaction. Within the meaning of the handwritten exclusion, K&S "sign[ed] a deed in lieu of foreclosure," thus exempting K&S from paying commission. As the trial court correctly recognized, we need not determine whether the Vander Veen transaction was a deed in lieu of foreclosure for purposes of excise tax liability.

Finally, the Vander Veen transaction involved K&S giving up the property in exchange for removal of Kingen and Switzer's personal guarantees. The handwritten exclusion explicitly applies to this transaction. This transaction falls within the

69445-6-I/39

exclusion's general language denying Leibsohn a commission. We conclude the court properly denied Leibsohn's motion for partial summary judgment on the basis that the transaction here was a deed in lieu of foreclosure for purposes of the 2009 amended listing agreement.[24]

Leibsohn also contends a material issue of fact remains regarding whether he accepted the modified listing agreement containing the deed in lieu of foreclosure exception. At summary judgment, both Leibsohn and SeaTac took the position that the 2009 agreement was valid. Leibsohn's complaint below and his opening brief on appeal both admit that he accepted the October 2, 2009 counterproposal from K&S—including the commission exclusion—through several of his actions. Appellant's Br. at 13-15. He signed the agreement, sent the signed agreement to CBA and used it as the basis of his complaint, and performed according to the agreement by marketing the property at the newly lowered price. No issue of fact exists regarding these events. Leibsohn specifically alleged that he accepted the 2009 agreement and represented to the court that he accepted it.[25] We accept this allegation as true for summary judgment purposes.

---

[24] Leibsohn argues that public policy strongly supports the determination that the transaction here was a "sale." He contends, "If this transaction is not a 'sale,' any prospective purchaser of a property with any encumbrances could avoid excise tax by using the same meaningless legal constructs." Appellant's Br. at 30-31. His argument fails to acknowledge that the property involved here was already in foreclosure proceedings. And as discussed above, whether excise tax is due is not determinative of whether a transaction is a "deed in lieu of foreclosure" for purposes of a listing agreement exclusion. Leibsohn's listing agreement specifically excluded the transaction involved here. No public policy concerns are implicated.

[25] Leibsohn represented to the court in his opposition to Colliers and Vander Veen's motion to stay that "On or about October 2, 2009, [Leibsohn] and K & S

-39-

## Tortious Interference Claim Against SeaTac

Leibsohn argued below that SeaTac tortiously interfered with a contract or

business expectancy. Leibsohn's appellate brief fails to address the merits of his

tortious interference claim. Instead, he addresses only the "deed in lieu versus sale"

issue and refers us to his summary judgment briefing below on the remaining issues.[26]

Appellant's Br. at 18. This is improper.[27] Nevertheless, because Leibsohn argued the

---

executed a modification to the Agreement," namely the "deed in lieu of foreclosure"
exclusion. Similarly, Leibsohn's declaration stated, "The Agreement was amended as
of October 2, 2009 by Leibsohn and K & S so as to provide the following . . . [deed in
lieu of foreclosure exception]." At the oral argument on summary judgment, Leibsohn
similarly conceded that the amended agreement
> was executed by both parties, it was performed in part.
> Leibsohn Property Advisors sent out marketing materials, interfaced with
> buyers, all evidence that's in front of this Court. So there is at least a question of
> fact as to whether there is also that listing agreement that is enforceable and
> does establish the existence of a valid contractual relationship.

RP (Aug. 31, 2012) at 25.

[26] Leibsohn addresses the merits of the tortious interference claim in his
appellate reply brief in response to the defendants' observation that his opening brief
improperly incorporated by reference his summary judgment briefing.

[27] RAP 10.3(a)(6) provides that the appellant's brief should contain "argument in
support of the issues presented for review, together with citations to legal authority and
references to relevant parts of the record." Issues incorporated solely by reference to
trial court memoranda will be deemed abandoned on appeal. U.S. West Commc'ns,
Inc. v. Wash. Utils. & Transp. Comm'n, 134 Wn.2d 74, 111-12, 949 P.2d 1337 (1997);
see also Patterson v. Superintendent of Pub. Instruction, 76 Wn. App. 666, 676, 887
P.2d 411 (1994) (briefs presented to trial court cannot be incorporated by reference into
an appellate brief).
> Even when appealing from summary judgment dismissal, plaintiffs should avoid
> incorporating by reference the briefs filed with the trial court. In Holland v. City of
> Tacoma, 90 Wn. App. 533, 954 P.2d 290 (1998), the plaintiff appealed from summary
> judgment dismissal and, in his opening brief, incorporated by reference arguments he
> made in his trial briefs. Division Two of this court refused to consider the arguments
> incorporated by reference, deeming them abandoned. Holland, 90 Wn. App. at 537-38.
> The court stated that if the relevant pages from the plaintiff's trial briefs were added to
> his appellate brief, the resulting brief would be well over RAP 10.4's 50-page limit.

issues below and the trial court considered his briefing, we address his tortious interference claim.

Leibsohn argued below that SeaTac tortiously interfered in one of two ways: (1) interference with the expired 2008 listing agreement through its tail provision or (2) interference with the 2009 agreement by influencing K&S to write in the deed in lieu exclusion, thus interfering with Leibsohn's expectancy that the contract would continue on materially similar terms as previous contracts.

To establish tortious interference with a contractual relationship or business expectancy, a plaintiff must show (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference, for an improper purpose or using improper means, inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. Kieburtz & Assocs., Inc. v. Rehn, 68 Wn. App. 260, 267, 842 P.2d 985 (1992). SeaTac argues that no issues of fact remain on any of the elements.

2008 Listing Agreement

Leibsohn does not dispute that his 2008 listing agreement expired on November 1, 2009, before the Vander Veen transaction closed. He also argued below that the 2008 agreement's tail provision applied only "if the [2009] extension was

Holland, 90 Wn. App. at 538. The court based its decision on the excessive length of the plaintiff's arguments and did not resolve the question of whether a trial brief may be incorporated by reference if the total number of pages remains within the 50-page limit. In dictum, however, the court suggested that the practice would be frowned upon: "[E]xpansion by reference would render the Rules on Appellate Procedure meaningless." Holland, 90 Wn. App. at 538.

ineffective," essentially conceding that the 2009 agreement, if valid, replaced the 2008 agreement. Leibsohn correctly concedes this point. Generally, "the legal effect of a subsequent contract made by the same parties and covering the same subject matter, but containing inconsistent terms, 'is to rescind the earlier contract. It becomes a substitute therefor, and is the only agreement between the parties upon the subject.'" Higgins v. Stafford, 123 Wn.2d 160, 165-66, 866 P.2d 31 (1994) (quoting Bader v. Moore Bldg. Co., 94 Wn. 221, 224, 162 P. 8 (1917)). When examined in light of the parties' subsequent conduct, "it is apparent that [the parties] proceeded in a manner" consistent with the intent to renew Leibsohn's listing agreement on amended terms. Carpenters Trust of W. Wash. v. Algene Constr. Co., 11 Wn. App. 838, 840, 525 P.2d 834 (1974). See also Carpenters, 11 Wn. App. at 840-41 (concluding that appellant's "subsequent conduct [after signing agreement] reflects the respondent's contention that there is a continuing contract."). As discussed above, we conclude Leibsohn accepted the 2009 agreement. That agreement was valid, superseded its predecessor, and excluded the transaction at issue here, leaving no basis for Leibsohn's tortious interference claim regarding the 2008 agreement. We need not address the 2008 agreement's tail provision.[28]

---

[28] Even if we address the tail provision, Leibsohn's argument fails. The 2008 agreement's tail period provision applies if the owner "sells the property within six months after the expiration or sooner termination of [the] Agreement to a person or entity that submitted an offer to purchase the property during the term of [the] Agreement." Leibsohn claimed below that K&S "sent Vander Veen a letter of intent agreeing to sell the property to Vander Veen's undisclosed principal" while Leibsohn's 2008 listing agreement was still in effect. But a letter of intent is not an offer. Further, Leibsohn's cited exhibit consists of an October 1, 2009 e-mail from Switzer to Vander Veen in which Switzer stated, "I am working on a letter of intent for you agreeing to a

### 2009 Amended Listing Agreement

Leibsohn contends that SeaTac wrongfully influenced K&S to insert the deed in lieu exclusion and thus interfered with his expectancy that the agreement would continue on terms materially the same as his previous listing agreements.

### Valid Expectancy

To establish expectancy in an at-will relationship (or contractual relationship set to expire by its own terms), Leibsohn must prove he "'had every right to anticipate [it] would continue, and . . . would have continued but for the intervention of [Colliers, Vander Veen, and SeaTac].'" F.D. Hill & Co. v. Wallerich, 67 Wn.2d 409, 413, 407 P.2d 956 (1965) (quoting Calbon v. Knudtzon, 65 Wn.2d 157, 164, 396 P.2d 148 (1964)). Leibsohn must "have a legal right to that which he claims to have lost." Birkenwald Distrib. Co. v. Heublein, Inc., 55 Wn. App. 1, 10, 776 P.2d 721 (1989). A plaintiff has no reasonable expectancy when the other party to the contract has and exercises a contractual right to withhold its consent. Birkenwald, 55 Wn. App. at 10-11; Broten v. May, 49 Wn. App. 564, 569, 744 P.2d 1085 (1987). In Birkenwald, the court explained that because a supplier had the right to terminate the distributor at will, the distributor had no claim for tortious interference when the supplier refused to approve transfer of the distributorship agreement to a new distributor. Birkenwald, 55 Wn. App. at 11.

---

deed in lieu of in exchange for releases from all the debt." This is not evidence of an "offer to purchase the property" triggering the agreement's tail provision.

Leibsohn also argues that the "fact that the offer was the 'purchase the debt,' rather than the property, does not matter when the substance of the proposed transaction was clearly a sale . . . ." Appellant's Reply Br. at 15. This argument depends on his contention that the trial court erred in determining the transaction was a deed in lieu of foreclosure rather than a sale. We address that argument above.

Thus, the mere existence of a contract does not give rise to a valid expectation that an agreement continues beyond its express terms.

Leibsohn correctly notes that K&S extended the 2006 listing agreement in 2007 and 2008 with no material changes to the terms. From this, Leibsohn contends that he had a valid business expectancy "that K&S would extend the 2008 Exclusive Sale Listing Agreement with no change except to the list price . . . ." Appellant's Reply Br. at 5. Leibsohn is incorrect. He had no reasonable expectancy that K&S would sign the extended listing agreement on the terms he proposed. By the time Leibsohn's 2008 contract was due to expire, Centrum had filed a judicial foreclosure action seeking personal judgments against K&S's principals based on their personal guarantees. K&S was engaged in deed in lieu discussions. K&S did not breach the agreement or terminate it prematurely. It simply declined to renew the contract on the terms Leibsohn proposed. As Switzer explained when he made his counteroffer to Leibsohn's proposed listing agreement extension, "We would gladly pay you a fee for selling the property. We will not pay a fee [to] give up our property to our lenders, no matter who they may be." Leibsohn had no reasonable expectation that the agreement would be renewed on its original terms with no modifications addressing the foreclosure.

Leibsohn's proposed extension required a commission if, among other scenarios, (1) the property was made unmarketable by the owner, (2) the owner withdrew the property from sale, or (3) the owner otherwise prevented the broker from selling it. Thus, a foreclosure could potentially trigger Leibsohn's right to a commission. In amending the agreement, K&S made clear that given the pending foreclosure, it could not accept Leibsohn's proposed language:

> We have hung in there with you as our broker for over 2 years. . . .
>    Short of a sale by you, we will either lose the property to our lenders or lose it to our new note holders in exchange for the deed. We lose and are in a serious negative position unless you can come through. We would gladly pay you a fee for selling the property. We will not pay a fee [to] give up our property to our lenders, no matter who they may be.

Leibsohn had no reasonable expectation that a client in foreclosure would agree to terms potentially requiring a commission for the logical consequences of the foreclosure.[29]

### Improper Purpose or Means

Leibsohn also fails to show SeaTac's improper purpose or means. Here, the property's debt far exceeded any potential purchase price. The property was in foreclosure, meaning the lenders controlled its fate. The loans were the property of the lenders, and Leibsohn had no listing agreement with them. His listing agreement was with K&S. SeaTac was a party to the foreclosure action and Leibsohn cites no law or rule preventing SeaTac from talking to the lenders or buying their interests. He also cites no rule preventing SeaTac from pursuing a financially advantageous transaction

---

[29] Leibsohn also contends that he had a valid business expectancy in the unaltered renewal of his 2008 listing agreement because when Switzer received Leibsohn's proposed extension, he responded, "I think I can now sign the agreement." Leibsohn fails to note that given that the property was in foreclosure, K&S could not sign a new listing agreement without Centrum's approval. Leibsohn cites only part of what Switzer wrote. Switzer also wrote, "I told you I had to talk to Gerry and Mac before completing the fee agreement. We had to see what our position with Centrum was before we did anything else. I just got off the phone with them and am waiting for a call back from Mac. I think I can now sign the agreement. I will see if I can read the document you sent, sign it and get it back to you." This exchange followed the September 28 meetings among K&S, Leibsohn, and the lenders, at which Leibsohn was told that the lenders were working on a deal to sell their notes to Vander Veen's undisclosed note buyer. Given the entire context, Leibsohn fails to show Switzer created a valid business expectancy through this e-mail.

given that the property was in foreclosure. Leibsohn fails to establish a material issue of fact on this element.

## Damages

SeaTac argues that Leibsohn fails to show a material issue of fact exists on damages. We agree. Damages must be supported by evidence that provides a reasonable basis for estimating the loss and does not amount to mere speculation or conjecture. Shinn v. Thrust IV, Inc., 56 Wn. App. 827, 840, 786 P.2d 285 (1990). In a tortious interference claim, the plaintiff "must show that the future opportunities and profits are a reasonable expectation and not based on merely wishful thinking." Sea-Pac Co. v. United Food & Commercial Workers Local Union 44, 103 Wn.2d 800, 805, 699 P.2d 217 (1985).

Here, due to the pending judicial foreclosure, a limited period of time existed for Leibsohn to sell the property. To the extent Leibsohn claims he would have earned a commission by selling the property to someone other than SeaTac, he fails to identify the buyer, the price, or the timing of the potential transaction and also fails to show it would have occurred before the foreclosure. To the extent Leibsohn claims he could have received a commission from SeaTac's deed in lieu transaction, he fails to show money would have been available to pay his commission. In his deposition, Leibsohn admitted that K&S told him that he would only receive a commission if he found a buyer willing to pay at least $14.5 million, due to the existing debt on the property. SeaTac paid approximately $12.2 million to purchase the loans in the deed in lieu transaction.

Even if SeaTac's City Council authorized SeaTac to spend up to $12.7 million (as Leibsohn contends), Leibsohn fails to show that the extra money would have gone

toward his commission. K&S was insolvent after the transaction. Leibsohn had no agreement with SeaTac or the lenders regarding a commission and presents no evidence of their willingness to pay him while incurring large losses. Leibsohn's claimed damages are speculative.

SeaTac's Cross Appeal

SeaTac appeals the trial court's denial of its request for attorney fees based on RCW 4.84.330 and the attorney fees provision in the contract between Leibsohn and K&S. SeaTac points to the exclusion in Leibsohn's 2009 listing agreement and argues that Vander Veen and his undisclosed principal (SeaTac) are intended beneficiaries of the listing agreement containing the fee provision. Thus, SeaTac argues it can enforce the attorney fees provision as a third party beneficiary of the listing agreement.

SeaTac fails to prove it is a third party beneficiary of the listing agreement. A presumption exists that parties contract for their own benefit and not for a third party's benefit. JOSEPH M. PERILLO, CALAMARI AND PERILLO, CONTRACTS § 17.3 at 666 (5th ed. 2003). This presumption is rebuttable premised on proof that the parties entered the agreement to benefit a third party. Lonsdale v. Chesterfield, 99 Wn.2d 353, 361-63, 662 P.2d 385 (1983). Creation of a third-party beneficiary contract requires that the contracting parties, "at the time they enter into the contract, intend that the promisor [here K&S] will assume a direct obligation to the claimed beneficiary [here SeaTac]." Warner v. Design & Build Homes, Inc., 128 Wn. App. 34, 43, 114 P.3d 664 (2005) (emphasis added). The test of intent is an objective one—whether performance under the contract necessarily and directly benefits the third party. Warner, 128 Wn. App. at 43. An incidental, indirect, or inconsequential benefit to a third party is insufficient to

demonstrate intent to create a contract directly obligating the promisor to perform a duty to a third party. Warner, 128 Wn. App. at 43.

SeaTac fails to rebut the presumption that the parties here contracted for their own benefit and not for its benefit. SeaTac points to no record evidence to establish that when K&S and Leibsohn entered into the listing agreement, K&S intended to assume a direct obligation to SeaTac. No language in the agreement mentions SeaTac or shows that SeaTac is an intended third party beneficiary. The mention of an unnamed "third party" in the listing agreement's exception for deed in lieu transactions is insufficient to make SeaTac a third party beneficiary. The exclusion did not obligate K&S to sell the property to SeaTac or assume any other obligation on SeaTac's behalf. The exception was clearly intended to benefit K&S in the event the described transaction occurred. Any advantage SeaTac gained was incidental. The trial court properly denied SeaTac's request for attorney fees.

Fees on Appeal

SeaTac requests an award of fees and costs on appeal based on its third party beneficiary argument. Because SeaTac was not an intended third party beneficiary of the listing agreement between Leibsohn and K&S, it is not entitled to appellate attorney fees and costs.

Colliers and Vander Veen also request fees on appeal, citing CBA bylaws providing for attorney fees if a party successfully seeks confirmation of an arbitration award:

> In the event of petition to the Superior Court (and any appeal thereof to an appellate court) for confirmation or vacation of an award, the court (including an appellate court) shall, if the Petitioner is successful in whole or in part, include in

its judgment or order: interest at the above rate; court costs (including any deposition and brief printing expenses); and a reasonable amount for the Petitioner's attorneys' fees.

Because we reverse and remand with instructions to confirm the arbitration decision, we award reasonable attorney fees and costs on appeal upon compliance with RAP 18.2.

## CONCLUSION

The trial court improperly vacated the arbitration decision in favor of Colliers and Vander Veen and lacked grounds to impose sanctions against those parties. However, the trial court properly (1) denied Leibsohn's motion for partial summary judgment, (2) granted SeaTac's motion for summary judgment, and (3) denied defendants' request for attorney fees below. We affirm in part, reverse in part, remand with instructions to confirm the arbitration decision, and award Colliers and Vander Veen appellate attorney fees and costs.

WE CONCUR: